**Antonio CIPOLLONE, individually and as executor of the Estate of Rose D. Cipollone, Plaintiff,**

v.

**LIGGETT GROUP, INC., a Delaware Corporation; Philip Morris, Incorporated, a Virginia Corporation; and Loew's Theaters, Inc., a New York Corporation, Defendants.**

**Susan HAINES, Etc., Plaintiff,**

v.

**LIGGETT GROUP, INC., et al., Defendants.**

Civ. A. Nos. 83–2864, 84–678.

United States District Court, D. New Jersey.

Dec. 9, 1986.

---

Budd, Larner Gross, Picillo, Rosenbaum, Greenberg & Sade, Short Hills, N.J., Wilentz, Goldman & Spitzer, Woodbridge, N.J., for plaintiffs.

Brown & Connery, Westmont, N.J., for defendant Philip Morris, Inc.

Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein, Newark, N.J., for defendant Loew's Theaters, Inc.

Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, Woodbridge, N.J., for defendant Liggett Group, Inc.

SAROKIN, District Judge.

The parties here move for clarification of the effect of the Third Circuit's opinion in

this case, *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181 (3d Cir.1986), regarding the preemptive effect of the Cigarette Labeling and Advertising Act on plaintiff's tort suit against the defendant cigarette manufacturers. The Third Circuit's opinion has thus left this court with the unenviable task of discerning what that court meant by its mandate and what, if anything, remains of plaintiff's claims as a result of it.

The Third Circuit's opinion states as follows:

> [W]e hold that the Act preempts those state law damage actions relating to smoking and health that challenge either the adequacy of the warning on cigarette packages or the propriety of a party's actions with respect to the advertising and promotion of cigarettes. We further hold that where the success of a state law damage claim necessarily depends on the assertion that a party bore the duty to provide a warning to consumers in addition to the warning Congress has required on cigarette packages, such claims are preempted as conflicting with the Act.

Critics of the opinion argue, with considerable justification, that carried to its logical extreme this conclusion permits the tobacco industry to take out a full page advertisement declaring the Surgeon General to be wrong, urging that his warnings should be ignored, and claiming that smoking is safe without risking civil liability to anyone mislead thereby.

Indeed, the plaintiff argued to the Court of Appeals that the advertising and promotion campaigns of cigarette manufacturers negated the mandated warnings and intentionally misled and deceived the consuming public. The decision of the Court of Appeals clearly rejects the plaintiff's right to pursue that theory and makes no distinction between the intentional, negligent, or good faith publication of such assertions. The opinion broadly holds that suits which challenge "the propriety of a party's actions with respect to the advertising and promotion of cigarettes" are preempted.

Despite this court's vehement disagreement with that conclusion, it is duty bound to follow the dictates of a superior court. Therefore, according to the Court of Appeals, no matter how false or misleading cigarette advertising may be or have been, and even if intentionally so, no state law cause of action may arise on behalf of anyone who may have relied thereon to their detriment or death. Indeed, the tobacco industry evidently can continue to deny or refute the risks of cigarette smoking with impunity and immunity so long as the little rectangle with the necessary language appears in its advertising and on its cigarette packages. Faced with that mandate, the court has little difficulty in determining what is and what is not left of plaintiff's claims.

BACKGROUND

On August 1, 1983 plaintiff Antonio Cipollone and his wife Rose (now deceased) filed a suit claiming that defendants were liable in tort to plaintiffs because they had manufactured cigarettes which allegedly caused Mrs. Cipollone to develop lung cancer. Plaintiffs' complaint set forth claims based on strict liability (Counts 2, 3 and 9), negligence (Counts 4 and 5), breach of warranty (Count 7) and intentional tort (Counts 6 and 8). More specifically, these counts claimed that the defendants' cigarettes were unsafe and defective (Counts 2 and 9) and that defendants are subject to liability for their failure to warn of the hazards of cigarette smoking on the basis of strict liability (Count 3) and negligence (Count 4). In addition, the Cipollones claimed that defendants negligently (Count 5) or intentionally (Count 6) advertised their products in a manner that neutralized the warnings actually provided, and in any event that the warnings were made meaningless by the addiction and dependency caused by defendants' cigarettes (Count 9). Finally, the complaint stated that the defendants ignored, failed to act upon, and conspired to deprive the public of medical and scientific knowledge reflecting the dangers associated with cigarettes (Count 8).

Defendants each answered, asserting as an affirmative defense, *inter alia,* that plaintiffs' claims are preempted by the Federal Cigarette Labeling Act, as amended by the Public Health Cigarette Smoking Act, 15 U.S.C. § 1331 *et seq.* (the Act). Plaintiff then moved to strike such defense, and defendant Loew's Theatres cross-moved for judgment on the pleadings. In an opinion dated September 20, 1984, *Cipollone v. Liggett Group, Inc.,* 593 F.Supp. 1146 (D.N.J.1984), this court held that the Act did not expressly or impliedly preempt any of plaintiffs' causes of action, and therefore granted plaintiffs' motion to strike and denied defendant's motion for judgment on the pleadings. Defendants appealed, initially challenging both the striking of their defense and the denial of defendant Loew's motion for judgment on the pleadings, but they then withdrew the latter challenge. By opinion dated April 7, 1986, *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181 (3d Cir.1986), the Court of Appeals reversed this court's grant of the motion to strike and remanded this case for further proceedings. Meanwhile, plaintiff Rose Cipollone died and her husband, acting individually and as executor of her estate, became the sole plaintiff in this case. Upon remand, the parties have agreed that plaintiff's claims based on failure to warn and negligent advertising and promotion arising after 1965 as set forth in Counts 3, 4 and 5 are preempted under the Court of Appeals' holding. They also agree that those claims contained in Counts 3, 4 and 5 based on failure to warn or negligent advertising and promotion before 1966 (agreed upon as the effective date of the Act) remain intact. They continue, however, to dispute whether the Act preempts those of plaintiff's theories of strict liability which are premised on improper design, or those premised on fraud, misrepresentation, express warranty or negligent research and testing. For this reason, plaintiff requests clarification as to what portions of his complaint survive in the wake of the Court of Appeals' opinion. Defendants also cross-move for judgment on the pleadings.

## DISCUSSION

The Act's preemption provision, 15 U.S.C. § 1334(b), states that "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." In interpreting this provision, the Court of Appeals first addressed the issue of express preemption by stating that "[W]e ... express our agreement with the district court's conclusion that section 1334 does not provide for express preemption of the Cipollones' state common law claims." *Id.,* 789 F.2d at 185. On the other hand, the Court of Appeals concluded that the Act does implicitly preempt those state law damage actions relating to "the propriety of a party's actions with respect to the advertising and promotion of cigarettes", or any state claim that "necessarily depends on the assertion that a party bore the duty to provide a warning to consumers in addition to the warning Congress has required on cigarette packages." *Id.,* 789 F.2d at 187. Accompanying this mandate, however, was the cautionary note that

> [W]e observe that the Cipollones' tort action concerns rights and remedies traditionally defined solely by state law. We therefore must adopt a restrained view in evaluating whether Congress intended to supercede entirely private rights of action such as those at issue here.... In light of this constraint, we cannot say that the scheme created by the Act is "so pervasive" or the federal interest involved "so dominant" as to eradicate all of the Cipollones' claims.

Thus this court is instructed to find preemption as to each of those state law damage claims that relates to "advertising and promotion" or "necessarily depends" on a showing that there was a greater duty to warn than that which Congress had already imposed, but the court is further informed that this test is not to be read too broadly, and does not encompass all of Mr. Cipollone's claims. With these teaching in

mind, the court turns to the specific theories in plaintiff's complaint.

## A. *The Strict Liability Claims*

Counts 2, 3, and 9 allege causes of action based on strict liability theories. Count 2, paragraphs 9 and 10, states as follows:

9. The cigarettes manufactured and sold by defendants ... presented a risk to the plaintiff's decedent far greater than any social utility.

10. The cigarettes manufactured and sold by the defendants ... and purchased and used by Rose D. Cipollone, were in an unsafe and defective condition.

Count 3, paragraph 2, provides that: The cigarettes manufactured and sold by defendants ... were defective as a result of ... defendants' failure to provide adequate warnings of the health consequences of cigarette smoking.

Count 9, paragraph 2, provides that: The cigarettes manufactured and sold by defendants ... were defective as a result of the cigarettes causing addiction and dependency and therefore rendering any warning meaningless.

As this court has had recent occasion to note, strict liability may be imposed under New Jersey law for product defects which take any one of three forms; "a manufacturing flaw, a design defect, or an inadequate warning." *Cipollone v. Liggett Group, Inc.*, 644 F.Supp. 283, 287 (D.N.J. 1986), *citing Feldman v. Lederle Laboratories*, 97 N.J. 429, 449, 479 A.2d 374 (1984). Plaintiff's brief indicates that he does not intend to proceed under a manufacturing flaw theory, and he also concedes that his failure to warn theory in Count 3 is preempted under the Court of Appeals' decision. What remains in dispute, then, is whether there is preemption of plaintiff's design defect claims in Counts 2 and 9. Under the Court of Appeals' mandate, resolution of this issue requires a foray into New Jersey law, in order that this court may determine whether the success of these claims "necessarily depends" on a showing that defendants' warnings were inadequate.

■ Looking first to Count 2, the court reads plaintiff's submissions to state design defect claims under two different rationales; first, that defendants could have designed a cigarette that was safer, and second, that whether or not a safer design was possible, cigarettes as currently designed are "unreasonably unsafe" under the "risk/utility" analysis promoted by Dean Wade and adopted by the New Jersey Supreme Court. *See Whitehead v. St. Joe Lead Co.*, 729 F.2d 238, 244 (3d Cir.1984). Imputing to the manufacturer knowledge of the defect in its product as well as knowledge of the other design alternatives, New Jersey strict liability law then determines whether it acted in a reasonably prudent manner in marketing the product nevertheless. *Feldman v. Lederle Laboratories*, 97 N.J. 429, 451, 479 A.2d 374 (1984).

■ As for the theory that a safer alternative was possible, defendants make no challenge to its continuing viability other than to state that plaintiff's answers to interrogatories fail to establish that he will succeed on the facts. Needless to say, this ground for dismissal is premature given that this matter is currently before the court for judgment on the pleadings. No argument whatsoever having been presented that plaintiff's design defect claim will fail as a matter of law due to the adequacy of defendants' warnings, the court will deny defendants' motion to dismiss this aspect of plaintiff's complaint.

The continuing viability of plaintiff's "unreasonably unsafe product" theory is a somewhat more involved question. Risk/utility theory posits that "only safe products should be marketed—a safe product being one whose utility outweighs its inherent risk, provided that risk has been reduced to the greatest extent possible consistent with the product's continued utility." *Beshada v. Johns-Manville Products Corp.*, 90 N.J. 191, 199, 447 A.2d 539 (1982). Defendants claim that this theory is preempted for two reasons. First, they

argue, the issue of defendants' warnings is "necessarily" a part of plaintiff's design defect claims because that issue is one of the seven so-called Wade-Keeton factors that the New Jersey Supreme Court has declared relevant in determining whether a product's risks outweigh its utility.[1] Second, they claim, even if the adequacy of defendants' warnings were not in issue, a state law holding them strictly liable for marketing cigarettes would run afoul of Congress' intent to safeguard cigarette commerce as a part of the national economy.[2]

■ As for defendants' first argument, an examination of the New Jersey Supreme Court's teachings establishes that such argument miscasts the role of failure-to-warn in risk/utility analysis. For failure-to-warn is merely an alternative ground, rather than a necessary prerequisite, for recovery under risk/utility theory. This point was made clear by the New Jersey Supreme Court's lengthy discussion in *Beshada v.*

*Johns-Manville Products Corp.*, 90 N.J. 191, 199, 447 A.2d 539 (1982) of the distinction that its own precedent had fashioned between "warning" cases and other strict liability cases.

"Warning" cases constitute one category of strict liability cases.... For purposes of analysis, we can distinguish two tests for determining whether a product is safe: (1) does its utility outweigh its risk? and (2) if so, has that risk been reduced to the greatest extent possible consistent with the product's utility? The first question looks to the product as it was in fact marketed. If that product caused more harm than good, it was not reasonably fit for its intended purposes. We can therefore impose strict liability for the injuries it caused without having to determine whether it could have been rendered safer. The second aspect of strict liability, however, requires that the risk from the product be reduced to the greatest extent possi-

---

1. These factors are so named because they were first synthesized by Dean Wade as a set of criteria for determining whether a product's risks outweigh its utility. Wade, *On the Nature of Strict Tort Liability for Products*, 44 Miss.L.J. 824, 837–38 (1973). As listed by the New Jersey Supreme Court in *Cepeda v. Cumberland Engineering Co.*, 76 N.J. 152, 174, 386 A.2d 816 (1978), they are:

    (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.

    (2) The safety aspects of the product—the likelihood that it will cause injury, and the probable seriousness of the injury.

    (3) The availability of a substitute product which would meet the same need and not be as unsafe.

    (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

    (5) The user's ability to avoid danger by the exercise of care in the use of the product.

    (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

    (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

2. Defendants also assert that plaintiff's theory does not state a claim under New Jersey law because that state's courts would use a "consumer expectation" test, rather than a "risk/utility" test in the case of "generic products with alleged inherent dangers which are a matter of public awareness." (Def. br. at 27). According to the New Jersey Supreme Court's most recent precedent in this regard, however, compliance with consumer expectations is simply not the only—nor even the most important—factor to consider when determining whether a manufacturer should be found liable for placing any given product on the market. Although consumers' expectations are relevant to the overall determination of whether a product's risks outweigh its utility, a product that complies with those expectations may nonetheless lead to strict liability if other considerations (for example, the "usefulness and desirability of the product" as balanced against "the likelihood that it will cause injury, and the probable seriousness of the injury") indicate that the manufacturer acted unreasonably in placing the product on the market. *O'Brien v. Muskin Corp.*, 94 N.J. 169, 182–83, 463 A.2d 298 (1983). In any event, even if defendants' argument were correct as a matter of law, issues of fact are implicated, such as the actual nature of consumer expectations in this case, which cannot be determined on the pleadings.

ble without hindering its utility. Whether or not the product passes the initial risk-utility test, it is not reasonably safe if the same product could have been made or marketed more safely.

Warning cases are of this second type. When plaintiffs urge that a product is hazardous because it lacks a warning, they typically look to the second test, saying in effect that regardless of the overall cost-benefit calculation the product is unsafe because a warning could make it safer at virtually no added cost and without limiting its utility.

*Beshada,* 90 N.J. at 201–202, 447 A.2d 539. According to this language, the first prong of risk/utility analysis has nothing whatever to do with the adequacy of defendants' warning labels. Rather, the simple question that *Beshada* would pose at that stage is whether the product's risks outweigh its usefulness as it is employed by the consumer. If so, it would be within that category of "products, including some for which no alternative exists, [which] are so dangerous and of such little use that under the risk-utility analysis, a manufacturer would bear the cost of liability of harm to others." *O'Brien v. Muskin Corp.,* 94 N.J. 169, 184, 463 A.2d 298 (1983). It is only when this prong of risk/utility analysis is decided in the defendant's favor, *i.e.,* when it has already been determined that the product's utility does indeed outweigh its risks, that the adequacy of the defendant's warnings even potentially enters into the analysis. Given that plaintiffs have the option of proceeding with their claim purely under the first prong of risk/utility analysis, it is inappropriate at this stage to conclude that defendants are entitled to dismissal of plaintiffs' design defect claims.

Furthermore, plaintiff may well fashion a successful claim even under the second prong of the test enunciated in *Beshada.* For failure-to-warn is an alternative, but non-essential, aspect of that portion of the risk/utility inquiry as well. Indeed, as the above quoted passage in *Beshada* establishes, a defendant's failure to place adequate warnings on its product is only one potential kind of lapse that may lead to liability under prong two. For example, yet another completely independent ground for liability—and one that plaintiff has already stated that he plans to assert— is a product's failure to embody the state of the art existing at the time it was marketed. *O'Brien v. Muskin Corp.,* 94 N.J. 169, 181–83, 463 A.2d 298 (1983). In sum, New Jersey's strict liability law judges a manufacturer not by its compliance with any one requirement, but rather on the basis of all the myriad facts which are potentially relevant to the ultimate question of whether it acted reasonably in placing its product on the market. *See Feldman v. Lederle Laboratories,* 97 N.J. 429, 451, 479 A.2d 374 (1984).

> In brief, risk-utility analysis is not a petrified, but a dynamic process. Where a particular product falls on the risk-utility continuum will depend on the facts of each case. A toy that poses undue risks to infants may be viewed differently from a therapeutic device that protects or prolongs life. As we proceed, as we must, on a case-by-case basis, risk-utility analysis provides the flexibility necessary for an appropriate adjustment of the interests of manufacturers, consumers, and the public.

*O'Brien,* 94 N.J. at 183, 463 A.2d 298. Indeed, both as originally conceived by Dean Wade and as adopted by the New Jersey Supreme Court, the seven-factor Wade test was intended only to be a set of guiding criteria for courts faced with the question whether the case is one that is appropriate for submission to a jury. *See* Wade, *supra,* at 840; *O'Brien,* 94 N.J. 186–87, 463 A.2d 298. It would, therefore, appear more appropriate to conduct the balancing test when all the facts are fully developed through the litigation process, rather than to render a decisive judgment on the matter at the pleading stage. The court accordingly finds that plaintiff's strict liability claim in Count 2 is not "necessarily" preempted by the Act under the Court of Appeals' decision, and consequently that defendant Liggett's motion to dismiss on the pleadings must be denied.

■ Count 9 as now worded, on the other hand, contains some ambiguity which renders it more susceptible to a preemption defense. To the extent that it claims the addictive quality of defendant's products, standing alone, to be an actionable defect, it presents a claim under the first prong of risk/utility analysis only and therefore escapes preemption. By asserting that this defect also neutralized defendants' warnings, however, Count 9 of its own accord announces that plaintiff will limit himself to an ineffective warning claim under the second prong of the test. As such theory is unquestionably preempted under the Court of Appeals' holding, the court will grant defendants' motion to strike that portion of Count 9 that calls into question the effectiveness of defendants' warnings.

■ Defendants' second argument, that all of plaintiff's strict liability claims must be dismissed because they conflict with Congress' intent to promote the sales of cigarettes, may be dealt with summarily. This contention, addressed by this court on two previous occasions, *see Cipollone v. Liggett Group, Inc.*, 593 F.Supp. 1146, 1168 (D.N.J.1984); *Cipollone v. Liggett Group, Inc.*, 644 F.Supp. 283 (D.N.J.1986), states in plainer form that no state tort claim whatsoever may lie against defendants for any harms resulting from their product, because such liability would cut into the profits of the tobacco industry and therefore contradict Congress' intention that the cigarette industry be allowed to survive. Such argument simply proves too much. For as noted by the Supreme Court in *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 257–58, 104 S.Ct. 615, 626–27, 78 L.Ed.2d 443 (1984), however, Congress may at the same time intend to encourage the development of a particular industry and to permit individuals to recover under state law for injuries caused by those industries. Whether it has such intention must be determined independently with regard to each statute, by examining the statute's wording and its legislative history. *Cipollone,* 593 F.Supp. at 1167 n. 17. In this instance, the Court of Appeals has examined the Act and has concluded that it cannot be said

that the federal scheme created by Congress was intended to eradicate all of plaintiff's claims. *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 187 (3d Cir.1986). Therefore, unless such claims relate specifically to the matters about which the Court of Appeals expressly found preemption— namely, defendants' promotional and sales activities, or the adequacy of their warnings—the impact of state tort liability on defendants' profit margins is simply not in itself a sufficient ground to trigger preemption by the Act. A separate question is whether it is proper at this juncture to grant plaintiff's motion to strike defendant's preemption defense as to plaintiff's strict liability claims. As noted, the Court of Appeals directed that "a court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent' and the factual background of the case is more fully developed than was that of this case. *Cipollone,* 789 F.2d at 188. While the foregoing analysis establishes that no facts regarding advertising and promotion are, theoretically, "necessarily" part of a plaintiff's risk/utility claim a plaintiff may nonetheless attempt to introduce such facts to a jury, and indeed those facts may be "necessary" to success in his specific claim. Since the nature of plaintiff's proofs is not clear at this stage, it cannot be stated with certainty that his claim does not "necessarily" depend on facts relating to defendants' advertising and promotion of cigarettes. The court will therefore deny plaintiff's motion to strike as to Counts 2 and 9 without prejudice to his right to reassert the motion at a later stage.

## B. *Negligence Claims*

Count 4 alleges in relevant part that: The defendants were negligent in the manner they tested, researched, sold, promoted and advertised the cigarettes which said defendants manufactured and sold.

Count 5 claims that:

[A]s a direct and proximate result of defendant[s' negligent advertising], the warnings that were given regarding the adverse health effects of smoking were neutralized and rendered ineffective.

Plaintiff concedes that Count 5 and the portion of Count 4 which alleges negligent promotion and advertising are preempted. He still asserts the right, however, to press his claim of negligent testing, and to support it with facts showing that cigarette manufacturers performed and/or sponsored testing and research only to the extent that it aided the image of tobacco use, and that they avoided research or testing which would reveal the true hazards of cigarettes. Defendants contend that no such allegation is permissible, in that "the mere negligent research and testing of a product, standing alone, is [not] actionable independent of the manufacturer's duty to warn of the risks posed by the product." (D. br. at 13).

A reading of New Jersey's case law on negligent testing and research establishes, however, that a manufacturer owes a duty to use reasonable care and skill in designing and producing a product that is reasonably fit, suitable and safe for its intended purposes, which duty stands independent of its duty to warn. In *Feldman v. Lederle Laboratories*, 97 N.J. 429, 456–57, 479 A.2d 374 (1984), for example, the New Jersey Supreme Court stated that a manufacturer is in a "superior position to know the technological material or data in the particular field or specialty ..." and therefore "should keep abreast of scientific advances" and "may also be required to make tests to determine the propensities and dangers of his product." Thus a cause of action for negligent manufacture and testing may be made out simply by showing that the defendant did not maintain the proper standard of care in carrying out those particular activities. No additional proof of a "failure to warn" complicates this straightforward theory of liability. Enforcement of this tort theory therefore interferes in no way with the uniform national advertising scheme established by

the Act. Defendant's motion to strike this aspect of Count 4 is therefore denied.

As for plaintiff's request to strike the preemption defense as to defendant's negligent research and testing claims, the foregoing analysis establishes that the matter of defendant's advertising or promotion activities is one that stands completely outside the scope of those allegations, and therefore that such motion should be granted with regard to the remaining portions of Count 4.

### C. *Intentional Tort, Fraud, and Misrepresentation*

Count 6 provides in relevant part that: Defendants, ... individually and as members of the tobacco industry, intentionally, wilfully, and wantonly, through their advertising, attempted to neutralize the warnings that were given regarding the adverse effects of cigarette smoking.

Count 8 provides in relevant part that: Defendants were or should have been, at all times relevant hereto, in possession of medical and scientific data which indicated that the use of its [sic] cigarettes were [sic] hazardous to the health of consumers, but ... ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the consumer of the defendants' products, of said medical and scientific data.

Both of these claims attempt to make defendants liable for intentionally misleading the public and/or depriving it of the information necessary to make informed choices about the hazards of smoking. Defendants argue that such claims must be stricken because they all relate to the cigarette companies' "promotion" activities, for which the Court of Appeals concluded that there is a blanket preemption.

Having concluded that the Court of Appeals meant to exempt defendants from liability for what they did say, it follows that they cannot be held liable for what they did not say. Saying publicly what is not true is not much different from con-

cealing what is true. To excuse any manufacturer from liability for actively misleading the public or concealing essential information is done by this court only by compulsion of the Court of Appeals' mandate. But having been directed that no liability exists for misstating the truth, logic compels that the same result must occur for concealing it.

Thus, the court finds that Count 8's allegations that defendants "ignored and failed to act upon" medical and scientific data to be preempted. These allegations amount to nothing more than a failure to warn. However, the court concludes that Count 8's allegation that defendants "conspired to deprive the public" of this data is not necessarily preempted. Actions by defendants to prevent third parties from releasing data that would otherwise be public, for example, cannot be construed as "promotion" activities. Count 8 is not preempted, then, to the extent that it alleges that defendants took affirmative steps to prevent others from releasing data indicating the health hazards of cigarette use.

For the foregoing reasons, the court, with great misgivings, grants defendants' motion to dismiss Count 8, and denies plaintiff's motion to strike defendants' preemption defense with regard to Count 8.

As to Count 6, which attempts to make defendants liable for intentionally "neutralizing" the effects of the federally-mandated warning labels by means of their advertising, by its own terms, this aspect of plaintiff's complaint challenges conduct which would fall within the category of "advertising" and is therefore preempted.

In an attempt to avoid the full impact of the Court of Appeals' decision on this point, plaintiff argues that its preemption conclusion does not extend to promotions which do not have or require the mandated warnings. Defendants, on the other hand, took the position at oral argument that although direct attacks on the warning might be actionable under some intentional tort theory, indirect attacks would not be. Neither distinction is logical or contained in the Court of Appeals' opinion.

As for plaintiff's argument, it is inconceivable that the Court of Appeals meant that a promotional piece which debates the risks of smoking would not preempt state tort liability if the federal warning did not appear or was not required, but that the identical promotion would preempt liability if the warning appeared or was required.[3] The same lack of support exists with respect to defendants' distinction. For it is likewise inconceivable that the Third Circuit did not mean to find preemption in the case of direct attacks on the warnings, but meant to find preemption in the case of subtle, indirect attacks which purported to deny, refute or challenge the risks contained in the warnings. To draw this arbitrary distinction would require this court to ignore totally the plaintiff's theory of the case as presented to the Court of Appeals, i.e., that defendants' advertising and promotion were designed to be misleading and deceptive in such a way as to neutralize the required warnings. In sum, the Court of Appeals indisputably painted with a broad brush on this issue, finding an unqualified preemption with respect to all acts of advertising or promotion that defendants may have conducted, whether intentionally or negligently harmful, and regardless of whether those activities were accompanied by or required the federally mandated warning labels. Plaintiff's motion to strike the preemption defense with regard to Count 6 is therefore denied, and defend-

**3.** In support of this position, plaintiff points to a recent administrative ruling, *In the Matter of R.J. Reynolds Tobacco Co., Inc.,* FTC Docket No. 9206 (Aug. 4, 1986), which held that there exist some forms of communication by the cigarette companies which are in the nature of "editorial opinions" and therefore cannot be made subject to the federal warning label requirement for first amendment reasons. Regardless of the correctness of this conclusion (a matter on which this court has no jurisdiction to decide) the court finds itself bound to follow the more direct, and higher, authority of the Third Circuit, which has found preemption for all promotional statements made by the cigarette companies without distinction between those accompanied by warning labels and those not so accompanied.

ant's motion to dismiss Count 6 will be granted.

### D. *Count 7*

■ Count 7 sets forth a claim based on express warranty. That claim states that "Defendants ... expressly warranted that smoking the cigarettes which they manufactured and sold did not present any significant health consequences." This claim inevitably brings into question defendants' advertising and promotional activities, and is therefore preempted.

## CONCLUSION

It is important to remember that in deciding these issues the court makes no finding or prediction as to whether this plaintiff or others with similar claims will ultimately succeed. What is at stake here is the fundamental right to present those claims to a court of competent jurisdiction for adjudication. The Court of Appeals has issued a directive which this court must follow which severely curtails that opportunity. In essence, no claim may be pursued which is predicated upon either the failure to warn the consuming public of known dangers regarding the risk of smoking, or upon the dissemination of information about smoking through advertising and promotion, even if calculated to deceive and mislead and to encourage existing smokers to continue and non-smokers to begin. It is ironic that the legislation which the tobacco industry sought so hard to defeat now serves to substantially immunize it from liability; and that deceiving the consuming public and concealing the truth from it is deemed to be an activity which Congress impliedly intended to protect in enacting this legislation. In essence, without any express authority from Congress, a single industry, for the first time in our country's history, may speak what is untrue, may conceal what is true, and may avoid liability for doing so merely by affixing certain mandated warnings to its products and advertising.

## ORDER

This matter having been opened to the court on the motion of plaintiff for clarification of the decision of the Court of Appeals for the Third Circuit, *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181 (3d Cir. 1986), and on the cross-motion of defendants for dismissal on the basis of federal preemption, and the parties having agreed that Counts 3 and 5 of plaintiff's complaint are preempted by federal law as construed by the decision of the Court of Appeals, and the court having considered the submissions of the parties and the arguments of counsel, and for the reasons expressed in the opinion of the court,

IT IS this 9 day of December, 1986 hereby

ORDERED that plaintiff's motion to strike defendants' preemption defense is denied as to Counts 2, 6, 7, 8 and 9, and it is further

ORDERED that defendants' motion to dismiss is denied as to Count 2, and it is further

ORDERED that defendants motion to dismiss is granted as to Counts 6, 7 and 8, and it is further

ORDERED that plaintiff's motion to strike defendant's preemption defense is granted as to that portion of Count 4 which alleges negligent research and testing, and plaintiff's motion is otherwise denied as to Count 4, and it is further

ORDERED that defendants' motion to dismiss is denied as to that portion of Count 4 which alleges negligent research and testing, and defendants' motion is otherwise granted as to Count 4, and it is further

ORDERED that defendants' motion to dismiss is granted as to that portion of Count 9 which alleges the ineffectiveness of defendants' warnings, and defendants' motion is otherwise denied as to Count 9.