**Nickolas GIANITSIS, et al.**

v.

**AMERICAN BRANDS, INC., et al.**

**No. C–86–299–L.**

United States District Court, D. New Hampshire.

April 4, 1988.

---

Stephen R. Fine & Associates, P.A. by Stephen R. Fine, Manchester, N.H., for plaintiffs.

Ransmeier & Spellman by E. Tupper Kinder, Concord, N.H., Goodwin, Proctor & Hoar by Marshall Simonds and Thomas J. Griffin, Jr., Boston, Mass., Upton, Sanders & Smith by Russell F. Hilliard, Sulloway, Hollis & Soden by Irvin D. Gordon, and Edward M. Kaplan, Concord, N.H., Devine, Millimet, Stahl & Branch, P.A. by Matthias J. Reynolds, Manchester, N.H., Orr and Reno, P.A. by William L. Chapman, Concord, N.H., for defendants.

## ORDER ON MOTION TO DISMISS AMENDED COMPLAINT

LOUGHLIN, District Judge.

This is a diversity action pursuant to 28 U.S.C. § 1332 in which the defendants have moved to dismiss all of the claims initiated by the plaintiff as set forth in his original and amended complaints (Doc. #1 and #69).

The plaintiff, Nickolas Gianitsis, a resident of Nashua, New Hampshire has asserted a variety of claims against a number of defendants associated with the American Tobacco industry. These defendants include American Brands, Inc., a New Jersey corporation with a principal place of business in New York; Philip Morris, Inc., a Virginia corporation with a principal place of business in New York; R.J. Reynolds Tobacco Co., a North Carolina corporation with a principal place of business within that state; Lorillard Inc., a North Carolina corporation with a principal place of business in New York; the Tobacco Institute, an industry trade organization with a principal place of business in Washington, D.C.

### I. *Background*

Plaintiff alleges that he is currently suffering from lung cancer and its complications. In his complaint, the plaintiff asserts that his disease is a direct and proximate result of his continuous use of cigarettes dating as far back as 1956.

The defendants, with the exception of the Tobacco Institute, are all manufacturers and distributors of cigarettes including, but

not limited to such brands as Lucky Strikes, Camels and Kents. The plaintiff claims to have used these products over an extended period, and attributes his cancerous condition to this use. The plaintiff has asserted the following claims: Negligence, misrepresentation, strict liability and unfair and deceptive trade practices.

The defendants have moved to dismiss this action on a number of grounds. The defendants assert that the plaintiff's claims are preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331–1340. The defendants also claim that the plaintiff's risk/utility theory of strict products liability fails to state a claim under New Hampshire law.

Responding, the plaintiff asserts that the claims set forth in the complaint involve situations which predate the Labeling Act legislation and thereby avoid the problem of preemption. The plaintiff also asserts that a risk/utility theory of strict liability is indeed cognizable under New Hampshire law.

Despite the plethora of counts alleged in the complaint, the plaintiff has candidly requested a ruling by this court on the availability of a risk/utility theory of liability. The request is prompted by the potential waste of vast amounts of time, resources and funds which may be expended unnecessarily, should the court fail to rule upon the issue. Simplistically put, the plaintiff has expressed his desire to avoid further exploration of his claims, absent the availability of a risk/utility theory of liability.

The issue which this court must address as a result of the defendant's motion to dismiss involves the application of an avante garde theory of strict liability to what may be termed an archaic human vice. Specifically, this court is asked to determine whether the plaintiff may pursue the defendants in tort, under a risk/utility theory of liability. This begs the question as to whether a plaintiff may assert an action against an alleged tortfeasor, absent a claim of manufacture, design or warning defect, merely because the risks of injury accompanying a product's

use, outweigh the utility or social value favoring the continued availability of the product. In this case, the plaintiff wishes to recover damages from the defendants because the plaintiff opines that the risks associated with smoking an ordinary cigarette, far outweigh the social value or utility of cigarettes to our society.

The defendants have moved to dismiss this action on a number of grounds. First, the defendants contend that the plaintiff's claims are preempted by the Federal Cigarette Labeling and Advertising Act. Secondly, the defendants assert that the plaintiff's risk/utility theory of liability fails to state a claim under New Hampshire law.

The plaintiff has responded to the defendants' motion by asserting that the preemption doctrine does not bar claims commenced under a risk/utility theory of liability, and that the operative facts giving rise to the claim occurred prior to the enactment of the legislation from which the preemption argument emanates. The plaintiff further contends that a risk/utility theory of liability is cognizable under New Hampshire law as expressed in the Restatement (Second) of Torts § 402A comment i (1957) [hereinafter Restatement 2d].

As previously indicated, in addition to the claims of risk/utility liability, the plaintiff has also asserted claims of negligence and misrepresentation. Albeit, the parties agree that the risk/utility theory of strict liability encompasses the pivotal issues in this action.

### A. *Strict Liability and Risk/Utility*

In our system of judicial determination of conflicts and alleged wrong doings, by and between members of our socio-economic community, legal theories of liability and recovery serve as guidelines which determine and dictate our conduct as members of the community. In tort law, two of the most common theories of liability asserted by individuals are negligence and strict liability. When strict liability is applied to injuries associated with the use of a product, the theory of liability asserted is commonly referred to as products liability.

*See* Prosser, *The Law of Torts,* § 99 (4th ed. 8th printing 1978).

The elements of such an asserted cause of action have been somewhat codified by the Restatement 2nd of Torts § 402A.

**Special Liability of Seller of Product for Physical Harm to User or Consumer**

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

The doctrine has been used to support claims for injuries arising from the use of a wide range of products, including automobiles, food products and lawnmowers. *See e.g. Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69 (1960); *McIntyre v. Coca–Cola Bottling Co.,* 85 F.Supp. 708 (W.D.Mo.1949). *Thibault v. Sears, Roebuck & Co.,* 118 N.H. 802, 395 A.2d 843 (1978).

As is clear from the language of the Restatement, the basis of any claim involving products liability, is an allegation of a defect associated with the product, which makes the product unreasonably dangerous, and causes the injury for which recovery is sought. *Wood v. Public Service Co.,* 114 N.H. 182, 188, 317 A.2d 576 (1974); *Buttrick v. Lessard & Sons, Inc.,* 110 N.H. 36, 38–39, 260 A.2d 111 (1969).

Traditionally, the alleged defect may exist in one of three forms. The claim may be for injuries arising out of the defective design of a product, defect in the manufacture of a product, or a defect in the failure to provide adequate warnings in conjunction with the use of a product. *Dyson v. General Motors Corp.,* 298 F.Supp. 1064 (1969); *Davis v. Wyeth Laboratories, Inc.,* 399 F.2d 121 (1968); *See also,* Prosser, *Law of Torts,* 657–59 (4th ed. 8th printing 1978). Once a claimant has alleged a defect giving rise to a product liability action, it must further be established that the product is unreasonably dangerous before recovery may be obtained. Restatement 2d § 402A. In order to determine whether a product is unreasonably dangerous, the Restatement provides some insight, particularly apposite to this action.

The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by "unreasonably dangerous" in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. *Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful;* but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous.

Restatement 2d § 402A Comment i (emphasis added).

Clearly, as stated in the first sentence of this comment, the question of whether a product is unreasonably dangerous, only arises once a claim of defective condition has been asserted. In other words, it would appear that a claimant must establish that it is a product's defective condition which causes the product to be unreasonably dangerous.

Dissecting the elements and intangible processes necessary to establish a valid products liability claim may seem initially, a nonsensical discussion of semantics. However, the importance of such an analysis is evident with reference to an additional theory of products liability which comprises the crux of the plaintiffs' claim in this action.

■ In 1973, John W. Wade, then Professor of Law at Vanderbilt University, published a comment in the Mississippi Law Journal proposing a new development in the application of product liability. J.W. Wade, *On the Nature of Strict Tort Liability for Products*, 44 Miss.L.J. 825, 836–38 (1973) [hereinafter Wade]. In his comment, Professor Wade recognized the apparent problems surrounding the terminologies of "defective condition" and "unreasonably dangerous" as set forth in § 402A of the Restatement 2d. *Id.* at 832–34. In discussing the problems inherent in these terms, Wade determined that an assertion of a defect associated with a product, is more properly a claim sounding in negligence. *Id.* at 837. Whether an action may have its base in products liability (strict liability) more properly hinges, according to Wade, on whether the product is unreasonably dangerous. *Id.* This theory became known as the risk/utility doctrine since, a claim in strict liability would be maintained where the risks associated with the products use, outweigh the social value or utility of the product due to the unreasonably dangerous nature of the product. *See Cipollone v. Liggett Group, Inc.,* 649 F.Supp. 664, 670–71 (D.N.J.1986).

The Cipollone case, which is heavily relied upon by the plaintiff, is apposite to the instant case in that it was an action against tobacco manufacturers based upon a theory of strict products liability, in which recovery was sought for the wrongful death of an individual who smoked cigarettes for an extended period. *Id.* at 667–68. In applying Professor Wade's theory, the *Cipollone* court summarized that an initial determination must be made as to whether a product's risks outweigh its usefulness or utility. *Id.* at 671. If the risks indeed outweigh the product's usefulness, then a manufacturer would "bear the cost of liability of harm to others." *Id.,* citing *O'Brien v. Muskin Corp.,* 94 N.J. 169, 184, 463 A.2d 298 (1983). However, if the risks are outweighed by the product's usefulness or utility, the product must then be examined for a defect.

> It is only when this prong of risk/utility analysis is decided in the defendant's favor, i.e., when it has already been determined that the product's utility does indeed outweigh its risks, that the adequacy of the defendant's warnings even potentially enters into the analysis.

*Cipollone,* 649 F.Supp. at 671. Herein lies the plaintiff's theory of recovery.

■ The plaintiff contends that under Wade's risk/utility theory of liability, failure to claim that cigarettes are defective in some way does not prevent recovery under strict liability, since he has alleged that cigarettes are, in and of themselves, unreasonably dangerous beyond an extent contemplated by the ordinary consumer, and that the risks associated with use of cigarettes far outweigh the usefulness of the product. *See Plaintiff's Memorandum in Support of Objection to Motion to Dismiss,* (Doc. #79) p. 11.

It would seem that the plaintiff's claim is in complete accord with the risk/utility theory espoused by Professor Wade. However, the decisive issue at this point, is whether this risk/utility theory of products liability is recognized under New Hampshire law. Indeed, since this court's jurisdiction is based upon diversity of citizenship, the court is bound by New Hampshire law. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Before addressing the viability of a risk/utility theory of product liability under New Hampshire law, this court notes that upon reconsideration of Professor Wade's theory in light of recent New Jersey legislation, the *Cipollone* court held that the plaintiff's risk/utility theory of recovery failed as a matter of law. *Cipollone v. Liggett Group, Inc.*, No. 83–2864, slip op. (D.N.J. Oct. 27, 1987) [available on WEST-LAW, 1987 WL 14666]. The recent New Jersey legislation in issue in that case concerned strict liability. The legislature, in passing the law adopted portions of the Restatement 2d of Tort, and in particular comment i (reproduced in this order on page 7). Since the language contained in comment i explicitly excluded cigarettes from within the bounds of strict product liability (absent a claim of defect), the plaintiff's claim under the risk/utility theory of liability could not be sustained. *Id.*

With this as a background, the court addresses the status of risk/utility under New Hampshire law.

The leading New Hampshire case dealing with strict products liability is *Thibault v. Sears Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978). Succinctly, the *Thibault* case concerned a claim for damages arising out of the use of a lawn mower manufactured by the defendant. *Id.* at 805, 395 A.2d 843.

The plaintiff cites *Thibault* in support of his asserted risk/utility theory, since this theory, as espoused by Professor Wade, is incorporated into the strict products liability discussion of the case. *Id.* at 807, 395 A.2d 843. The defendant cites *Thibault* as barring the plaintiff's risk/utility claims, since the language of this case indicates that New Hampshire has adopted the strict products liability theory encompassed by the Restatement 2d of Tort, and its interpretive comments. *Id.* at 806, 395 A.2d 843.

The positions of both parties have merit, however an analysis of the language in *Thibault* seemingly distinguishes the asserted positions. It appears that the New Hampshire courts have adopted the Restatement 2d of Tort. *See Buttrick v. Les-sard*, 110 N.H. 36, 260 A.2d 111 (1969); *Elliott v. Lachance*, 109 N.H. 481, 256 A.2d 153 (1969). The defendants contend that the adoption of this authority puts to rest the plaintiff's risk/utility claim, since comment i explicitly exempts cigarettes from attack.

The plaintiff contends that this is not dispositive of his claim since a risk/utility claim is cognizable under comment i, as reinforced by the *Thibault* case. This court disagrees!

The first sentence in comment i of the Restatement 2d of Tort states that the "section applies only where the defective condition of the product *makes* it unreasonably dangerous to the user or the consumer" (emphasis added). A simple interpretation of this section reveals that, prior to reaching a question concerning unreasonable dangerousness of a product, an allegation of some defect associated with the product must be maintained.

It is true that *Thibault* discusses the risk/utility theory. *Id.* 118 N.H. at 807–08, 395 A.2d 843. However, this theory is used by the court in determining whether the product is unreasonably dangerous, *as a result of the alleged defect. Id.*

In a strict liability case alleging defective design, the plaintiff must first prove the existence of a "defective condition unreasonably dangerous to the user." *Buttrick v. Lessard*, 110 N.H. at 38–39, 260 A.2d at 113; *Bellotte v. Zayre Corp.*, 116 N.H. 52, 352 A.2d 723 (1976). In determining unreasonable danger, courts should consider factors such as social utility and desirability. Wade, *On the Nature of Strict Tort Liability for Products*, 44 Miss.L.J. 825, 837 (1973). The utility of the product must be evaluated from the point of view of the public as a whole because a finding of liability for defective design could result in the removal of an entire product line from the market. Some products are so important that a manufacturer may avoid liability as a matter of law if he has given proper warnings. *See e.g., Basko v. Sterling Drug, Inc.*, 416 F.2d 417 (2d

Cir.1969); *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir.1968).

The plaintiff has claimed that he is not breaking new ground, since entire industries have gone down in the wake of products liability litigation. *See Transcript* p. 23. Facially, this statement is accurate. However, in view of the plaintiff's position, it lacks merit. The theory of products liability which has eliminated entire product lines from the market, has inevitably been one of warning or design defect. *See Basko v. Sterling Drug Inc.*, 416 F.2d 417 (2nd Cir.1969); *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir.1968). Even the latest case cited by the plaintiff in support of his position involves a failure to warn defect associated with the consumption of beer. *Hon v. Stroh Brewery Co.*, 835 F.2d 510, 511–13 (3rd Cir.1987).

Finally, the plaintiff's theory of risk/utility is an expansive doctrine of strict products liability. A thorough reading of the *Thibault* case reveals the court's circumspect attitude toward broadening the existing principles of strict products liability. *Thibault*, 118 N.H. at 806–07.

Therefore, this court rules that as a matter of law, the risk/utility theory of strict products liability as developed by Professor Wade, is not cognizable under New Hampshire law as applied to cigarette products.

## B. *Preemption*

■ In concluding that the plaintiff cannot proceed under a theory of risk/utility, the question now becomes whether the plaintiff may assert traditional grounds for strict products liability against the defendants. One traditional ground for asserting strict products liability is by means of alleging a defect in the nature of inadequate warnings.

Cigarette manufacturers have recently sustained a barrage of litigious attacks in which claimants have asserted claims sounding in strict products liability, based upon failure to properly warn of the product's inherent dangers. *See Defendant's Memorandum in Support of Motion to Dismiss* (Doc. # 73) Appendix A–M.

The issue of whether a plaintiff may maintain an action in strict products liability against cigarette manufacturers based upon a failure to warn has been recently addressed in the First Circuit. *Palmer v. Liggett Group Inc.*, 825 F.2d 620 (1st Cir. 1987). The court in *Palmer* determined that the Federal Labeling Act, 15 U.S.C. §§ 1331–34, preempts a claim for damages against a cigarette manufacturer based upon a failure to warn. *Palmer*, 825 F.2d at 626.

> [w]e therefore hold that a suit for damages on a common law theory of inadequate warning—if the warning given complies with the Act—disrupts excessively the balance of purpose set by Congress, and is thus preempted.
>
> To permit the interposition of state common law actions into a well-defined area of federal regulation would abrogate utterly the established scheme of health protection as tempered by trade protection. The Supremacy Clause of the Constitution, as enforced through the doctrine of preemption prohibits this.

*Id.*

Based upon this decision, it is clear that any claims asserted by the plaintiff based upon an inadequate warning theory of strict products liability, are preempted to the extent that the warnings fall within strictures of the Labeling Act. Therefore, those claims (to the extent they exist) must be dismissed.

However, the plaintiff contends that the Federal Labeling Act of 1966, has no retroactive application, and therefore does not preempt those claims for inadequate warnings which arose prior to passage of the legislation. Indeed, the plaintiff's complaint seems to preserve those causes of action extant prior to the passage of the Act in issue.

The defendants, on the other hand, fail to address this claim. Since, in considering a motion to dismiss, the court must construe the material facts alleged in the light most favorable to the non-moving party, this court cannot say that the plaintiff's claims which predate the Federal Labeling Act, must be dismissed. *Jenkins v. McKeithen*,

395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969) *reh'g denied,* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969).

A motion to dismiss is one of limited inquiry. The standard for granting a motion to dismiss is not the likelihood of success on the merits, but whether the plaintiff is entitled to offer evidence to support his claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint should not be dismissed unless it appears that appellant could "prove no set of facts in support of his claim which would entitle him to relief". *Jenkins,* 395 U.S. at 421–22, 89 S.Ct. at 1849.

The court grants the defendants' motion to dismiss (Doc. #73) those claims which purport to assess liability upon the defendants under the risk/utility doctrine as developed by Professor Wade. The court also grants the defendants' motion insofar as it pertains to those claims asserting failure to warn which are within the precepts of the Federal Labeling Act.

The defendants' motion is denied as to all other claims, including those which assert a failure to warn, arising prior to the passage of the Labeling Act Legislation.