Joan M. MAVILIA, Individually and as Personal Representative of the Estate of Anthony Mavilia, Jr., Deceased, and as Representative of the Minors Alison Mavilia and Anthony Paul Mavilia, Plaintiffs,

v.

STOEGER INDUSTRIES and Llama Gabilondo Y Cia S.A., Defendants.

Civ. A. No. 82–1097–G.

United States District Court, D. Massachusetts.

Nov. 3, 1983.

---

Windle Turley, John Howie, Dallas, Tex., Richard Bates Harris, Leominster, Mass., for plaintiffs.

Paul A. Kelley, Boston, Mass., for Llama Gabilondo Y Cia S.A.

Robert F. Charlton, Jr., Boston, Mass., for Stoeger Inds., Inc.

### MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

GARRITY, District Judge.

This is a wrongful death action in which jurisdiction is based on diversity. On October 9, 1980, Anthony Mavilia, Jr. was killed when, as an innocent bystander, he was struck by a bullet from a .38 caliber Llama automatic pistol. Plaintiffs in this action are the decedent's wife and two minor children. They have brought this suit not against the individual who shot the decedent but rather against the manufacturer and designer of the gun, Llama Gabilondo Y Cia, S.A. (Llama) and a United States distributor of the gun, Stoeger Industries. Liability is premised on two novel theories: (1) defendants breached their warranties to the consumer, bystander and general public because the gun as designed and marketed was not fit for its intended or ordinary purposes; and (2) defendants should be strictly liable for the death because the gun as designed and marketed was inherently defective. Plaintiffs claim that the risk of injury and death that accompanies the pistol far outweighs its utility. In addition, say plaintiffs, defendants failed to employ reasonable safeguards in the marketing and distribution of the product.

The defendants have filed a motion to dismiss for failure to state a claim for relief pursuant to Fed.R.Civ.P. 12(b)(6). It is well established that a court should not dismiss a complaint under 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Melo-Tone Vending, Inc. v. United States,* 1 Cir.1981, 666 F.2d 687, 688.

After hearing oral argument and considering comprehensive legal memoranda, we hold that Massachusetts law on products liability does not encompass plaintiffs' theories. In light of the formidable Massachusetts legislative policy against banning handguns and the duty of this court, sitting in diversity, to interpret and apply state law as it is now, we decline to stretch the Massachusetts law on products liability to find manufacturers and sellers of .38 caliber handguns liable for injuries resulting from the use of the guns, and thus grant defendants' motion to dismiss.

## I. *Massachusetts law on products liability*

■ Massachusetts law on products liability derives from the law on implied warranties, as codified in the Uniform Commercial Code, Mass.G.L. c. 106, §§ 2–314—2–318. There is no separate doctrine of strict products liability as such, although amendments to the UCC have made Massachusetts warranty law virtually identical to the law of strict products liability in other jurisdictions.[1] *Back v. Wickes*, 375 Mass. 633, 378 N.E.2d 964 (1978); Note, *Massachusetts Strict Products Liability Law: Alternate Route, Same Destination*, 14 New England L.Rev. 237 (1978). Consequently plaintiffs' claims in counts VI and VII of their complaint alleging strict liability for the decedent's death are without merit. It remains to determine whether plaintiffs have stated a claim for relief under Massachusetts warranty law.

■ Under Mass.G.L. c. 106, § 2–314, a supplier of goods warrants that the goods he supplies are "fit for the ordinary purposes for which such goods are used." Under § 2–315, if he has reason to know of any particular purpose for which the ~~goods~~ are required and that the buyer is relying on his skill to furnish suitable goods, he also warrants that the goods "shall be fit for such purpose."

The leading case interpreting these provisions is *Back v. Wickes, supra,* which, like the instant case, was also a wrongful death

suit involving a design defect. The deaths resulted from the explosion of decedents' mobile home when the vehicle struck a guardrail. Plaintiff claimed that the design of the gas tank was defective because the tank was not adequately shielded from collision. The case came before the Supreme Judicial Court to determine whether certain instructions to the jury were erroneous. In the course of its decision, the court explained the standards to apply in design defect cases. We quote at length from p. 642, 378 N.E.2d 964 of the court's opinion since we apply the same standards:

> * * * One question for the jury ... [is] whether this propensity [of the mobile home to explode in accidents], resulting from conscious design choices of the manufacturer, rendered the product *unreasonably dangerous* to its users and therefore unfit for highway travel. The "fitness" of this motor home and all others of the same design is a question of degree depending largely, although not exclusively, on *reasonable consumer expectations.*
>
> * * * In evaluating the adequacy of a product's design, the jury should consider, among other factors, "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." In balancing all the pertinent factors, the jury [makes] a judgment as to the *social acceptability of the design.*

(citations omitted; emphasis added).

Plaintiffs contend that application of these standards resolves the issue in their favor; at trial, plaintiffs could offer evidence of the tremendous danger of the Llama pistol and the great likelihood that such danger would occur, so that a jury could find the .38 caliber Llama automatic

---

**1.** In particular, the legislature has abolished the privity requirement and has eliminated the right of suppliers to disclaim the implied warranty of fitness. *See* Mass.G.L. c. 106, §§ 2–318, 2–316A.

pistol socially unacceptable. This argument is supported by two recent law review articles: Turley, *Manufacturers' and Suppliers' Liability to Handgun Victims*, 10 Northern Ky.L.Rev. 41 (1983); Note, *Manufacturers' Liability to Victims of Handgun Crime: A Common Law Approach*, 51 Fordham L.Rev. 771 (1983).[2]

Plaintiffs' argument, however, has been rejected by nearly every court that has considered the issue. *See Richman v. Charter Arms Corp.*, E.D.La.1983, 571 F.Supp. 192; *Bennet v. Cincinnati Checker Cab Co., Inc.*, D.Ky.1973, 353 F.Supp. 1206; *DeRosa v. Remington Arms Co.*, E.D.N.Y.1981, 509 F.Supp. 762. *Contra Steelman v. Garcia Gun Center, Inc.*, No. 82–17923, 11th Judicial Circuit of Fla., 1983, which denied defendant's motion to dismiss "in light of the record as presently constituted".[3]

In the most recent case to consider this issue, the district court for the Eastern District of Louisiana in the *Richman* case granted defendant's motion for summary judgment, finding as a matter of law that manufacturers are not strictly liable under Louisiana products liability law for marketing the "snub nose .38".[4] Louisiana law is slightly different from the law in Massachusetts, but the rationale for granting the motion applies equally here. In both states, the standard for establishing a design defect is to show that the product is unreasonably dangerous. To do this, a Louisiana plaintiff must show "either that no reasonable handgun manufacturer would market its product in the way defendant did knowing of the risks involved ... or that the risks involved are greater than a reasonable buyer would expect." *Richman*, at 197. Massachusetts relies heavily on this latter test, as noted above. Regarding this test the district court of Louisiana remarked at p. 197:

> As to the "consumer expectation" theory, common sense requires the Court to find that the risks involved in marketing handguns for sale to the general public are not greater than reasonable consumers expect. Every reasonable consumer that purchases a handgun doubtless knows that the product can be used as a murder weapon. This knowledge, however, in no way deters reasonable consumers from purchasing handguns. The "consumer expectation" theory normally applies in cases where the defendant has failed to attach an adequate warning to its product. In this case, however, it would be unreasonable to say that a death might have been averted had the [defendant] attached an adequate warning to each of its handguns explaining

---

**2.** This note focuses primarily on liability for injuries caused by small revolvers sometimes called "Saturday Night Specials." This type of easily concealable gun may have special features which bring it within the doctrine of strict liability or breach of warranty; however, it is not the subject of the instant case, and we express no opinion regarding the application of Massachusetts products liability law to the manufacturing of the Saturday Night Special handgun.

**3.** Oliver Wendell Holmes, in his *Collected Legal Papers*, 131–132 (1952) explained his theory against holding the manufacturers and sellers of guns liable as follows:

> If notice so determined is the general ground for liability, why is not a man who sells firearms answerable for assaults committed with pistols bought of him, since he must be taken to know the probability that, sooner or later, someone will buy a pistol of him for some unlawful end? ... The principle seems to be pretty well established ... that everyone has a right to rely upon his fellow-men acting lawfully, and, therefore, is not answerable for himself acting upon the assumption that they will do so, however improbable it may be. There may have been some nibbling at the edges of this rule ... but the rule hardly will be disputed. It applies in favor of wrongdoers as well as others.

**4.** The Court did not dismiss plaintiff's claim altogether. It denied defendant's motion for summary judgment on the issue of whether the marketing of guns is an ultrahazardous activity for which defendant should be held strictly liable. The issue of ultrahazardous activity has not been raised in the instant case, so we do not consider that issue. Examples of ultrahazardous activities in the Massachusetts case law are the use of dynamite for building roads and the manufacture of toxic drugs. *See Clark-Aiken Co. v. Cromwell-Wright Co., Inc.*, 1975, 367 Mass. 70, 323 N.E.2d 876.

how the product can be used and abused (citations omitted).

Similarly in our case, that death may result from careless handling of firearms is known by all Americans from an early age.

As for plaintiff's reliance on the "reasonable seller" theory, the Louisiana court found it equally misplaced, explaining as follows at p. 198:

> * * * The Louisiana legislature has neither enacted a statute banning the sale of handguns to the general public nor adopted a joint resolution to amend the Constitution to that effect. Given the prominence of the handgun issue in public debates, the only plausible explanation for the refusal to ban handgun sales to the general public, either by statute or by constitutional amendment, is that a majority of the legislators think such a ban would be undesirable as a matter of public policy.

In other words, the court inferred, "a majority of the legislators does not think marketing handguns for sale to the general public is an 'unreasonably dangerous' activity."

This too holds true in Massachusetts. The legislature has on numerous occasions in the past ten years considered banning handguns and has consistently rejected the proposals. It has enacted comprehensive licensing provisions for suppliers and purchasers, Mass.G.L. c. 140, § 122 et seq., indicating its disinclination toward banning handguns. It has also enacted a provision banning a variety of different weapons and has recently amended this list, but has not seen fit to include handguns. Mass.G.L. c. 269, § 12. Thus the clear inference is that the majority of legislators in Massachusetts also do not feel that the marketing of handguns to the public is an unreasonably dangerous activity or socially unacceptable.

The duty of the district court is to apply the law of the state in which it is sitting. *Hanna v. Plumer*, 1965, 380 U.S. 460, 85

S.Ct. 1136, 14 L.Ed.2d 8; *Cantwell v. University of Massachusetts*, 1 Cir.1977, 551 F.2d 879. While there have been no Massachusetts cases on products liability for the marketing of handguns, we are confident that the Massachusetts court would accept the inference of social acceptability from the legislative action, and hold as a matter of law that at least with regard to the .38 caliber Llama automatic pistol, the gun is not inherently defective; manufacturers and sellers therefore do not breach their warranties of fitness in supplying them to members of the general public.[5] For the above reasons we grant defendants' motion to dismiss for failure to state a claim for relief.

---

5. Neither party has requested certification of the issue to the Supreme Judicial Court of Massachusetts pursuant to Rule 1:03 of the Rules of the Supreme Judicial Court of Massachusetts, and we do not feel that this is the type of issue to be certified to the Supreme Judicial Court under Rule 1:03.