**Gisela MILLER, Administratrix of the Estate of Colton L. Miller, Deceased and Gisela Miller, Individually,**

v.

**BROWN & WILLIAMSON TOBACCO CORPORATION and Lorillard, Inc.**

**Civ. A. No. 86–5913.**

United States District Court, E.D. Pennsylvania.

Feb. 9, 1988.

Norman Perlberger, Wei–Wei Chiu, Philadelphia, Pa., for plaintiff.

Peter S. Greenberg, Franklin Poul, David I. Bookspan, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court is defendants Brown & Williamson Tobacco Corporation and Lorillard, Inc.'s renewed motion for summary judgment. For the reasons stated herein, defendants' renewed motion for summary judgment will be granted.

## I. FACTS

On October 8, 1986, plaintiff Gisela Miller ("plaintiff") filed the above-captioned action alleging that her husband died on June 5, 1985, at the age of twenty-eight (28), as a result of smoking cigarettes manufactured or promoted by defendants Brown & Williamson Tobacco Corporation ("Brown & Williamson"), Lorillard, Inc. ("Lorillard"), and The Tobacco Institute ("the TI").

According to plaintiff, the decedent began smoking cigarettes when he was about sixteen (16) years of age and smoked half of a package a day on average for nearly twelve (12) years. Plaintiff's Pretrial Memorandum at 3. He began smoking no earlier than 1973, which was more than seven (7) years after the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331, et seq. ("the Cigarette Labeling Act"), mandated uniform, Congressionally-drafted health warnings on each package of cigarettes.

On March 12, 1987, defendants moved for summary judgment on the ground that all counts of the Complaint are preempted by federal law, including the Cigarette Labeling Act as interpreted by the United States Court of Appeals for the Third Circuit in *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, *motion to vacate denied*, 802 F.2d 658 (3d Cir.1986), *cert. denied*, — U.S. ——, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987). On July 21, 1987, based upon the Third Circuit's holding in *Cipollone*, the court granted summary judgment against plaintiff and in favor of defendants on Counts II, III and IV of plaintiff's Complaint.[1]

The court notes that Count V does not state a separate basis for liability but merely alleges causation and damages and therefore should not be treated as a separate count.

The court denied, without prejudice to renew, defendants' motion for summary judgment as to Count I of plaintiff's Complaint. Now before the court is defend-

ants' renewed motion for summary judgment as to Count I.

Count I of the Complaint is labelled "Strict Liability" and claims that the defendants' cigarettes were sold in a defective condition since: (1) "... the risks, dangers, addictive nature and harm to the plaintiff's decedent and other persons similarly situated were and are inherent in said Tobacco Products;" and (2) "... they were and are incapable of being made safe for their intended and ordinary use and purpose and in that the risk and danger created by the Tobacco Products is distinctly greater than their utility, such that the use of a warning would make no difference, and liability should attach to defendants for harm caused by the Tobacco Products which they put on the market." Complaint at 5.

■ Because of developments in the law, and in the pleadings in this case, the court required plaintiff to state in her pretrial memorandum the specific theory of strict liability she was pursuing. The parties filed pretrial memoranda on August 10, 1987. In her pretrial statement plaintiff articulated her specific theory of strict liability as follows:

> The manufacture and distribution of cigarettes by the defendants subjects them to products liability. Cigarettes are defective products as defined by Section 402A of the Restatement of Torts, as defined by case law. From a risk-utility analysis, the health risks (i.e., lung cancer) outweigh any benefits to society.

Plaintiff's Pretrial Statement at 4. According to defendants' memorandum in support of their renewed motion for summary judgment, plaintiff's counsel amended this pretrial declaration by letter dated August 11, 1987, which attached a revised page 4 to plaintiff's pretrial statement, adding the following sentence:

> In addition to the risk-utility analysis as set forth in Plaintiff's Complaint, plaintiff also claims that cigarettes are defec-

---

1. Since Count IV was the only Count that plaintiff asserted against the TI, the TI is no longer a defendant in this action.

tively designed in that cigarettes can and should have been made safer.

Plaintiff never filed or submitted any such revision to the court.

In any event, neither the pretrial memorandum nor any filed or unfiled supplements to it are pleadings. *See* Fed.R.Civ.P. 7.

The parties agree that Section 402A of the Restatement (Second) of Torts ("§ 402A") controls the disposition of the instant motion. The only issue is whether or not § 402A can provide a basis for liability in such a case.

Defendants argue that the court should grant their renewed summary judgment motion because plaintiff cannot prevail on her only remaining claim since if it relies on allegedly inadequate warnings it would be preempted for the reasons set out in *Cipollone, supra,* and it cannot fulfill Pennsylvania's other possible standard (design defect)[2] for imposing strict liability. Defendants argue that Pennsylvania courts would not apply the risk-utility analysis which plaintiff advocates. Defendants contend that Pennsylvania courts have adopted comment i to § 402A, which states that products such as cigarettes cannot be deemed defective because the alleged risks of such products have been part of the common knowledge of consumers for years.

Plaintiff points out that the Pennsylvania Supreme Court has *discussed* three approaches used by the various jurisdictions to the question of design defect: (1) "consumer expectations" standard under which a product may be found defective in design if it failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner; (2) risk-utility standard under which a product may be found to be defective in design if, after the plaintiff proves that the design caused his injury, the defendant fails to establish that, on balance, the benefits of the challenged feature outweigh the risk of danger inherent in such design; and

(3) the *Azzarello, infra,* standard under which the jury may find a defect where a product leaves the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use. *Lewis v. Coffing Hoist Div.,* 515 Pa. 334, 528 A.2d 590, 593 (1987).

Plaintiff argues that by discussing the risk-utility approach, the Pennsylvania Supreme Court recognized it. The court agrees that the Pennsylvania Supreme Court "recognized" the risk-utility approach as one approach that other jurisdictions have utilized; however, the court does not accept plaintiff's contention that the Pennsylvania Supreme Court would embrace the risk-utility approach.

## II. DISCUSSION

Fed.R.Civ.P. 56(c) instructs a court to enter summary judgment when the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This rule provides the court with a useful tool when the critical facts are undisputed, facilitating the resolution of a pending controversy without the expense and delay of conducting a trial made unnecessary by the absence of factual dispute. *Peterson v. Lehigh Valley Dist. Council,* 676 F.2d 81, 84 (3d Cir.1982); *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Summary judgment is inappropriate, however, where the evidence before the court reveals a genuine factual disagreement requiring submission to a jury. An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

2. The third possible standard for imposing strict liability under § 402A is defective manufacture, which does not apply here.

trial." *Id.* at 2511. However, if the evidence is merely "colorable" or is "not significantly probative," summary judgment may be granted. *Id.*

In a summary judgment action, the moving party bears the initial burden of identifying for the court those portions of the record which it believes demonstrate the absence of a material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Following such a showing in a case where the non-moving party is the plaintiff and therefore bears the burden of proof, it must by affidavits or by the depositions and admissions on file "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Id.* at 2552–53; *Anderson, supra,* 106 S.Ct. at 2514; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(e). In making its ruling on a summary judgment motion, the court must view all inferences in a light most favorable to the non-moving party, *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982), must resolve all doubts against the moving party, *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985), and must take as true all allegations of the non-moving party that conflict with those of the movant, *Anderson, supra,* 106 S.Ct. at 2513.

In a diversity action such as this one, the court is obliged to follow the law of the appropriate state and, where necessary, to predict state law based on existing state decisions. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The court must therefore decide whether, under Pennsylvania law, strict liability will lie under § 402A for cigarettes which involve commonly known inherent risks.

The court notes that United States District Judge Norma L. Shapiro of this court recently addressed the same issues, and strict liability theories, of "design defect" and "risk-utility" that are presently before this court. The court believes that Judge Shapiro's analysis and reasoning as to those issues and claims are both persuasive and correct, and the court shall follow them and rely upon them here. *See Gunsalus v. The Celotex Corp., et al.,* 674 F.Supp. 1149, 1157–59 (E.D.Pa., 1987).

■ Plaintiff has the burden of proving defective design. On this record, plaintiff will not be able to demonstrate that there is something wrong with the design of cigarettes or how the design could be improved. Plaintiff has not identified any witnesses who will, or can, testify to either point. Indeed, Count I, the only remaining count, of plaintiff's complaint alleged that cigarettes are *"incapable* of being made safe for their intended use" (emphasis added), an allegation that is entirely inconsistent with plaintiff's defective design claim.

After direct inquiry at oral argument on the instant motion the court cannot say that plaintiff's counsel had any Fed.R. Civ.P. 11 good faith basis for asserting this recent defective design claim. Plaintiff's counsel's only asserted basis for this claim was a *New York Times* newspaper article which he said he read the week of the September 29, 1987 oral argument on defendants' summary judgment motion. This was well after plaintiff's counsel sent opposing counsel the one page revision to plaintiff's pretrial theory statement. According to plaintiff's counsel, the author of the newspaper article indicated that a cleaner cigarette is possible. None of plaintiff's experts will testify as to how cigarettes can be made safer. Plaintiff's pretrial memorandum does not list a single witness or document or piece of evidence that will mention a safer cigarette. Plaintiff's pretrial statement *of record* still does not mention any defective design claim. Plaintiff has not sought to amend her complaint to include a defective design claim.

If there were contaminants other than those commonly known to be present in their cigarettes, defendants presumably could be exposed to liability under Pennsylvania law. Plaintiff, however, has no evidence to support any such possibility.

In this action there has been more than

adequate time for discovery [3] and plaintiff has failed to make a showing sufficient to establish the existence of an element essential to her case (*i.e.*, defective design), and on which she would bear the burden of proof at trial.

Plaintiff has not proffered any evidence to support her untimely safer cigarette design theory. Since plaintiff's claim cannot survive defendants' motion for summary judgment on her safer cigarette design argument, the only remaining issue is whether Pennsylvania law embraces a "risk-utility" approach to the subject of design defects. If Pennsylvania law does provide for strict liability under a risk-utility analysis, then plaintiff's claim can survive defendants' motion for summary judgment. If, on the other hand, as the court believes, the Pennsylvania courts would not impose strict liability on a manufacturer under a risk-utility approach, then plaintiff has no legal claim.

 Plaintiff's counsel cited *Lewis v. Coffing Hoist Div.*, *supra*, to support plaintiff's contention that Pennsylvania law imposes liability based on a risk-utility argument; however, that case lends no such support. In *Lewis* the Pennsylvania Supreme Court merely mentioned the risk-utility approach as one of a few approaches that have been fashioned by "the various jurisdictions" in an attempt to answer the question of when a design defect may be found to exist. *Lewis, supra,* 528 A.2d at 593. A fair reading of *Lewis* tells us that the decision devotes more time and attention to the court's key decision in *Azzarello v. Black Bros. Co.,* 480 Pa. 547, 391 A.2d 1020 (1978), rather than any leaning to the adoption by the court of the risk-utility doctrine.

The court believes and accordingly concludes that Pennsylvania courts have not adopted, and will not adopt, the risk-utility theory of liability as the present state of the law. *Gunsalus, supra,* at 1159.

---

3. The Complaint was filed on October 8, 1986. The court entered a Fed.R.Civ.P. 16 Memorandum Order on November 24, 1986, which set a

## III. CONCLUSION

For all of the foregoing reasons defendants' renewed motion for summary judgment will be granted and judgment will be entered in favor of defendants and against plaintiff.

An appropriate Order will be entered.

discovery completion date of March 2, 1987. On March 3, 1987, the discovery completion date was extended to August 3, 1987.