**Joanne KOTLER, Individually and as the Administratrix of the Estate of George P. Kotler, Plaintiff,**

v.

**The AMERICAN TOBACCO COMPANY, Philip Morris, Inc., and Liggett Group, Inc., Defendants.**

**Civ. A. No. 86–0810–S.**

United States District Court, D. Massachusetts.

May 2, 1988.

As Amended May 25, 1988.

---

Nissen & Lumsden, Boston, Mass., for plaintiff.

Samuel Adams, Warner & Stackpole, Andrew F. Lane, Gaston Snow, Marshall Simonds, Goodwin, Procter & Hoar, Boston, Mass., for defendants.

## AMENDED MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS

SKINNER, District Judge.

Plaintiff Joanne Kotler, individually and as administratrix of the estate of her husband, George P. Kotler, brought this tobacco products liability action against defendants American Tobacco Company (Division of American Brands, Inc.), Philip Morris, Inc., and Liggett Group, Inc. Plaintiff claims that her husband contracted lung cancer and died as a result of smoking cigarettes manufactured by defendants. The complaint charges each defendant with negligence, breach of warranty, and negligent misrepresentation and deceit.

Following *Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir.1987), I held a hearing on October 5, 1987 to question the effect of *Palmer* on this case. Pursuant to a scheduling order, all three defendants have moved in effect to dismiss for failure to state a claim upon which relief can be

granted, Fed.R.Civ.P. 12(b)(6), although Liggett Group has titled its pleading a motion for judgment on the pleadings, Fed.R. Civ.P. 12(c).[1] For reasons set forth in this opinion, defendants' motions are allowed in part and denied in part.

### Background

Plaintiff filed the action on March 6, 1986 claiming that defendants were liable to plaintiff for manufacturing cigarettes which allegedly caused her husband to develop lung cancer. Counts I, VIII, and XV claim that plaintiff's decedent started smoking defendants' cigarettes as a proximate result of aggressive and negligently designed advertising campaigns, that defendants negligently failed to warn or adequately warn of the dangers of their cigarettes, that defendants knew or should have known with the exercise of reasonable care of their products' dangers, and that defendants negligently failed to adequately test, design, market, distribute and sell their products. Counts II, IX, and XVI claim that defendants warranted that the cigarettes purchased and smoked by the decedent were safe, merchantable, and fit for the use for which they were intended, that plaintiff's decedent relied on these warranties, and that defendants breached their express and implied warranties by selling cigarettes which were defective and whose risk outweighed their utility. Counts III, X, and XVII claim that defendants negligently or intentionally misrepresented the qualities and detrimental effects of cigarette smoking through their failure to provide warnings or adequate warnings and through their diverse marketing and advertising efforts, and that plaintiff's decedent detrimentally relied on these representations. The remaining counts are for loss of consortium and for punitive damages.

Defendants each answered, generally denying all substantive claims and asserting the affirmative defense, *inter alia,* that all of plaintiff's claims are barred by the Supremacy Clause and are preempted by the Federal Cigarette Labeling and Advertising Act, as amended, 15 U.S.C. §§ 1331–1340 (the "Act"). Subsequently, our Court of Appeals decided *Palmer, supra.*

In *Palmer,* the court narrowly framed the issue as whether the Act preempted plaintiff's smoking and health related claims that challenged either the adequacy of the federal warning on cigarette packages or the propriety of the defendant's advertising and promotion of cigarettes. The district court and both parties agreed that determination of the Act's preemptive effect controlled the disposition of virtually the entire case. The court held that the Act impliedly but not expressly preempted the Palmers' claims.

The court recognized that Congress explicitly announced a twofold purpose when it adopted the Act. The Act embodied an educational purpose which sought to inform the public of the hazards of cigarette smoking. 15 U.S.C. § 1331(1). This purpose was to be balanced by a trade protection policy that protected commerce and the national economy to the maximum extent possible. 15 U.S.C. § 1331(2). The court focused on the proper balance between these competing policies, and concluded that an action for damages on a common law theory of inadequate warning impermissibly disrupted the balance of purposes set by Congress and was thus preempted. *Id.,* at 626.

Defendants each base their motions on essentially the same grounds: first, that in accordance with *Palmer,* all claims which necessarily depend on an assertion that the warnings were inadequate or which question the propriety of the advertisement and promotion of cigarettes are preempted, and second, that each of plaintiff's claims requires proof that the cigarettes were "unreasonably dangerous" when sold, and that as a matter of Massachusetts law, this cannot be proved. *Back v. Wickes Corp.,* 375 Mass. 633, 378 N.E.2d 964 (1978); Re-

---

1. A motion by a defendant for judgment on the pleadings should be treated as a motion to dismiss for failure to state a claim upon which relief can be granted, *see generally,* 2A *Moore's Federal Practice* ¶ 12.15 (2d ed. 1987).

statement (2d) of Torts § 402A comment i (1965).

## Discussion

The preemption provision of the Act, 15 U.S.C. § 1334(b), states that "No requirement or prohibition based on smoking or health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labelled in conformity with the provisions of this chapter." *Palmer* narrowly limited the preemptive effect of this provision to those claims which challenged the adequacy of the warnings and the propriety of Liggett's advertising and promotion of cigarettes. Subsequently, Judge Mazzone entered judgment for the defendants and dismissed the entire complaint.

Unlike the plaintiff in *Palmer,* Kotler correctly asserts that the preemptive effect of the Act does not necessarily result in dismissal of virtually the entire case. *Palmer* did not decide that Congress intended to supersede all private rights of action when it passed the Act, nor did the court declare that the overall scheme created by Congress was so pervasive as to eradicate all of the Palmers' claims. Because of the narrowness of the court's holding, the effect of *Palmer* on plaintiff's claims for pre–1966 failure to warn, post–1965 failure to warn, design defect, and negligent misrepresentation or deceit must be discretely analyzed.

## Pre–1966 Failure to Warn

The Act took effect on January 1, 1966. Prior to this date, plaintiff's decedent smoked only cigarettes manufactured by American Tobacco. American Tobacco contends that since the *Palmer* complaint was based on both pre–1966 and post–1965 smoking, and since the court did not distinguish between those two periods when it declared that certain of plaintiff's state claims were preempted, the preemptive ef-

fect of the Act should extend to plaintiff's entire claim. American Tobacco's argument is unpersuasive for several reasons.

■ First, the Act does not provide for retroactive preemptive effect. Generally, retroactive operation will not be given to a statute unless the act clearly, by express and unequivocal language or necessary implication, indicates that the legislature intended a retroactive application. *United States v. Security Industrial Bank,* 459 U.S. 70, 79, 103 S.Ct. 407, 412–13, 74 L.Ed.2d 235, 242–45 (1982). *See generally,* 2 C. Sands, Sutherland on Statutory Construction § 41.04 (4th Ed.1972, Supp.1986). There is no language in the Act that even hints at retroactive application, and it surely is not necessary to give the Act retroactive application in order to give it full force or effect.

Second, the court's failure in *Palmer* expressly to distinguish between preemption of pre–1966 and post–1965 failure to warn claims does not compel the result that American Tobacco favors. The court of appeals appears to have relied on the consensus between the plaintiffs, defendants and the trial judge that the preemptive force of the Act controlled disposition of "virtually the entire case," *Palmer,* 825 F.2d at 622. There is no consensus between the parties to this action, and I conclude the proper interpretation of the Act is to allow plaintiff to pursue her claim for failure to warn prior to January 1, 1966. *Accord, Cipollone v. Liggett Group, Inc.,* 649 F.Supp. 664, 668 (D.N.J.1986).[2]

## Post–1965 Failure to Warn

■ *Palmer* dictates that those portions of plaintiff's claims which allege inadequacy or failure to warn after January 1, 1966 be dismissed for failure to state a claim upon which relief can be granted due to the preemptive effect of the Act. Plaintiff con-

---

**2.** American Tobacco raised the statute of limitations as an affirmative defense in its answer, but has not argued this ground in its motion to dismiss. Applicability of statutes of limitations in tobacco liability actions usually involves questions of fact for a jury, and American Tobacco will bear the burden of establishing as a matter of law that the challenged claims are barred. *Gunsalus v. Celotex Corp.,* 674 F.Supp. 1149, 1152 (E.D.Pa.1987); *see also, R.J. Reynolds Tobacco Co. v. Hudson,* 314 F.2d 776 (5th Cir. 1963).

cedes this, and no further discussion is necessary.

### Design Defect

■ The cornerstone of plaintiff's opposition to these motions is that *Palmer* does not render tobacco manufacturers immune from liability on other grounds which do not depend on challenging the adequacy or propriety of warnings or labelling or any other advertising or promotional materials. Plaintiff has charged that the cigarettes were defectively designed and breached the implied warranty of merchantability. Defendants counter that plaintiff cannot prove any of these allegations as a matter of law.

Massachusetts courts recognize claims for defective design as independent of claims for failure to warn. Whether adequate warnings are given with respect to use of a product is one factor to be considered in design defect cases, but warnings alone cannot absolve the manufacturer or designer of all responsibility for the negligent design of a product. *Uloth v. City Tank Corp.*, 376 Mass. 874, 384 N.E. 2d 1188, 1192 (1978). In a products liability case, furthermore, defendants cannot be found to have negligently designed their cigarettes without having breached the warranty of merchantability. *Hayes v. Ariens Co.*, 391 Mass. 407, 462 N.E.2d 273, 275 (1984) (a defendant in a products liability case in this Commonwealth may be found to have breached its warranty of merchantability without having been negligent, but the reverse is not true).

Liability for breach of warranty is governed by the Massachusetts version of the Uniform Commercial Code, M.G.L.A. c. 106, §§ 2–314—2–318, and is congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A (1965). *Hayes,* 462 N.E.2d at 277.[3] *See also, Back, supra; Correia v. Firestone Tire & Rubber Co.,* 388 Mass. 342, 446 N.E.2d 1033 (1983). M.G.L.A. c. 106, § 2–314(2)(c) provides that "goods to be merchantable must at least be such as are fit for the ordinary purposes for which such goods are used." Under Massachusetts law, questions of fitness for ordinary purposes are largely centered around "reasonable consumer expectations." *Back,* 378 N.E.2d at 970; *Venezia v. Miller Brewing Co.,* 626 F.2d 188 (1st Cir.1980). The "ordinary purposes" contemplated by § 2–314(2)(c) include both those uses which the manufacturer intended and those which are reasonably foreseeable. *Back,* 378 N.E.2d at 969; *Venezia,* 626 F.2d at 190. The overall focus in negligent design cases is not on how the product is meant to function, but on whether the product is designed with reasonable care to eliminate avoidable dangers. *Uloth,* 384 N.E.2d at 1191 (product may be negligently designed even though it functions as intended if design changes would have reduced the danger of the product without significant reduction in its efficiency and without undue cost). At the very least, plaintiff must demonstrate that the commodity was not reasonably suitable for ordinary uses for which goods of that kind and description are sold. *Walsh v. Atamian Motors, Inc.,* 10 Mass.App.Ct. 828, 406 N.E.2d 733 (1980).

Defendants argue that plaintiff's negligence and warranty claims for design defect fail to state a claim because Massachusetts law requires proof that the product was "unreasonably dangerous" when sold, and that as this term has been construed under section 402A of the Restatement, plaintiff is forestalled from making this

---

**3.** Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

　(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

　(a) the seller has exercised all possible care in the preparation and sale of his product, and

　(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

showing. *See, e.g., Mavilia v. Stoeger,* 574 F.Supp. 107 (D.Mass.1983). Defendants rely on comment i to § 402A, which states in relevant part, "[g]ood tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful." The flaw in defendants' argument, however, is that whether the tobacco in cigarettes purchased and smoked by plaintiff's decedent was "good" is a disputed question of fact in this action. Plaintiff alleges that the cigarettes were inadequately tested and designed, and that they contained toxic or carcinogenic ingredients. Plaintiff has sufficiently pleaded that the tobacco was "bad". Other courts have held that cigarettes may be found to be "bad" if the tobacco contains pesticide residues, which might conceivably result from inadequate testing, *see, Horton, et al. v. American Tobacco Co.,* 2.9 TPLR 3.583 (1987) (affidavit of Walter W. Dickerson), or if they contain excess nicotine or additives which may affect their safety. *Cf., American Tobacco Company v. Horton, et al.,* 2.5 TPLR 2.76, 2.79 (S.Ct.Miss.1987); *Shires v. Celotex Corp.,* 2.8 TPLR 2.159 (E.D.Pa. 1987) [available on WESTLAW, 1987 WL 15830]. This is an issue of material fact which cannot be determined on a motion to dismiss.

*Negligent Misrepresentation or Deceit*

■ Plaintiff's claims for negligent misrepresentation or deceit are admittedly founded on the premise that the labelling on defendants' cigarette packages and the advertisements used to promote the sale and consumption of their cigarettes were either inadequate or intentionally misleading. *Palmer* holds that these claims are preempted by the Act, but only with respect to conduct occurring after December 31, 1965.

*Conclusion*

For the foregoing reasons, defendants' motions to dismiss are ALLOWED as to those portions of Counts I, II, III, VIII, IX, XV, and XVI which allege post–1965 failure to warn or which otherwise necessarily depend upon a showing that the labelling or advertising used by defendants was in-

adequate or improper, ALLOWED as to those portions of IV, V, VII, XI, XII, XIV, XVIII, XIX, and XXI which derive therefrom, ALLOWED as to Counts VI, X, XIII, XVII, and XX, and DENIED in all other respects.