Joanne KOTLER, Individually and as Administratrix of the Estate of George P. Kotler, Plaintiff,

v.

AMERICAN TOBACCO CO. et al., Defendants.

Civ. A. No. 86–0810–S.

United States District Court, D. Massachusetts.

Jan. 12, 1990.

Eric Nissen, Nissen & Lumsden, Boston, Mass., for plaintiff.

Bruce G. Sheffler, John Delli Venneri and Thomas B. Bezanson, Chadbourne & Park, and Francis K. Decker, Jr., Webster & Sheffield, New York City, for American Tobacco Co.

Samuel Adams, Joseph J. Leghorn and Janice Kelley Rowan, Warner & Stackpole, Boston, Mass., for Liggett Group, Inc.

Daniel B. Bickford, Andrew F. Lane, Martha J. Koster and Stuart T. Rossman, Gaston Snow & Ely Bartlett, Boston, Mass., for The American Tobacco Co.

Marshall Simonds, Thomas J. Griffin, Jr., Goodwin, Procter & Hoar, Boston, Mass., for Philip Morris Co., Inc.

## MEMORANDUM AND ORDER ON THE MOTION OF DEFENDANT AMERICAN TOBACCO CO. FOR SUMMARY JUDGMENT

SKINNER, District Judge.

In this action the plaintiff seeks to recover damages for the death of her husband from lung cancer, allegedly caused by his smoking of cigarettes manufactured by the defendants. In prior proceedings I have disposed of a number of the claims asserted in the Amended Complaint. On May 25, 1988, I dismissed all claims for failure to warn of the risks of smoking cigarettes after January 1, 1966 as having been preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331–1340, in accordance with *Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir.1987). *Kotler v. American Tobacco Co.*, 685 F.Supp. 15 (D.Mass.1988). I ruled that claims for breach of warranty by reason of the addition of toxic or carcinogenic substances were not preempted. Claims for failure to warn and for misrepresentation and deceit prior to January 1, 1966 also survived the motion to dismiss, but these claims apply only to the defendant American Tobacco Co., because Mr. Kotler did not smoke the products of the other defendants, Philip Morris, Inc. and Liggett Group, Inc., until after January 1, 1966. After completion of the depositions of the plaintiff's experts in the summer of 1989, Philip Morris, Inc. and Liggett Group, Inc. moved for summary judgment on the plaintiff's claim of defective design, the only remaining claim against them. On November 21, I allowed their motions for reasons stated in the memorandum annexed hereto as Appendix A.

The remaining claims against American Tobacco Co., sounding in both negligence and breach of warranty, are for failure to warn of the risks of cigarette smoking, improper design and failure to test, and false advertising leading the public to believe that there were no risks in smoking cigarettes. The defendant has moved for summary judgment on all of these claims. In cases such as this one, where the plaintiff asserts that there are genuine issues of fact, summary judgment for the defendant may be granted only if, after accepting the plaintiff's version of the contested facts and viewing all inferences therefrom in the light most favorable to the plaintiff, the court concludes that no reasonable jury could return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Miller v. Brown & Williamson Tobacco Corp.*, 679 F.Supp. 485, 487–8 (E.D.Pa.), *aff'd*, 856 F.2d 184 (3d Cir.1988).

It is undisputed that Mr. Kotler died of lung cancer in 1986. There is evidence which would clearly warrant a finding that the lung cancer was caused by Mr. Kotler's lifelong habit of smoking several packs of cigarettes a day, a habit which commenced in 1942, when he was eleven years old.

With respect to her claim that the defendant's cigarettes were defectively manufactured and marketed, the plaintiff has produced evidence that the defendant dusted its cigarette tobacco with a toxic pesticide called DDVP. Her experts, however, are not prepared to testify what concentration of DDVP, if any, remained in the cigarettes or whether DDVP in any likely concentration in cigarette smoke would be carcinogenic for humans. Furthermore, the plaintiff's evidence on this branch of the case is subject to the same deficiency as her evidence against the other two defendants, as described in my order of November 21. The plaintiff's experts do not ascribe any causal connection between the use of DDVP (or any other identified additive) and the death of Mr. Kotler. On

the contrary, they uniformly identify the tobacco itself as the efficient cause of death. There has been more than adequate time for discovery. *Cf. Miller v. Brown & Williamson Tobacco Corp.*, *supra*, at pp. 488–9. Accordingly, the defendant is entitled to summary judgment on this claim.

■ The evidence proffered by the plaintiff in support of her claim that the defendant misrepresented the effect of cigarette smoking on health consists of a series of advertisements concerning the defendant's product, Pall Mall cigarettes, which was the only brand that Mr. Kotler smoked before January 1, 1966. These advertisements assert that the extra length of Pall Mall cigarettes gave them a more sophisticated appearance and a cooler smoke (at least during the incineration of the extra millimeters), that the tobacco was "bulked" and that smart people smoked Pall Malls. There is no showing that these statements were either related to health or untrue. In marked contrast to some other cigarette cases, such as *Cipollone v. Liggett Group, Inc.*, 683 F.Supp. 1487, 1500 (D.N.J.1988), *aff'd in part and rev'd in part*, 893 F.2d 541 (3d Cir.1990), and *Rogers v. R.J. Reynolds Tobacco Co.*, 761 S.W.2d 788 (Tex.Ct. App.1988), *writ denied*, the plaintiff has not alleged any general conspiracy to falsely represent the facts concerning the consequences of smoking, nor has she proffered any evidence from which this defendant's involvement in such a conspiracy could be inferred.

■ The plaintiff persists in her assertion that under the law of Massachusetts she would be entitled to recover damages for breach of warranty on the ground that even unadulterated cigarettes are unreasonably dangerous. Liability for breach of warranty has been held to be congruent in nearly all respects with the principles of strict liability expressed in Restatement (Second) of Torts § 402A (1965). *Hayes v. Ariens Co.*, 391 Mass. 407, 462 N.E.2d 273 (1984); *Back v. Wickes Corp.*, 375 Mass. 633, 378 N.E.2d 964 (1978). For liability to attach under § 402A, the product must be defective and *unreasonably* dangerous:

The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. *Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful;* but tobacco containing something like marijuana may be unreasonably dangerous.

*Gianitsis v. American Brands, Inc.*, 685 F.Supp. 853, 856 (D.N.H.1988), quoting (with added emphasis) from comment i to the Restatement section.

Plaintiff correctly states that the application of comment i has never been expressly decided by a Massachusetts court, but I think it is fair to say that all of the cases in which the Massachusetts courts have applied the principles of § 402A have entailed evidence of a defect in the product. This would appear to be the general rule except in jurisdictions in which the courts have adopted the "risk/utility analysis," e.g., (initially) *Cipollone v. Liggett Group, Inc.*, 649 F.Supp. 664, 670–1 (D.N.J.1986). This is a theory invented by Professor John W. Wade which requires the court to assess the social utility of the product in comparison to the risks attendant on its use. If the court deems the risks to be greater than the utility of the product, applying a seven part formula, the product is held to be unreasonably dangerous and the manufacturer or seller strictly liable for any harm resulting from its use. The theory was explained in some detail by Judge Loughlin in *Gianitsis, supra*, at 857–9, who then held that this theory was not part of the law of New Hampshire, at least as applied to cigarettes. Judge Bechtle arrived at the same conclusion with respect to the law of Pennsylvania in *Miller, supra*, at 489. In *Pennington v. Vistron Corp.*, 876 F.2d 414, 424–5 (5th Cir.1989), the court determined that the risk/utility theory had been adopted by the state

courts of Louisiana, but refused to decide the "unsettled question" whether cigarettes were unreasonably dangerous *per se* as a matter of Louisiana law. Initially Judge Sarokin, who supports the theory, concluded that the risk/utility theory was part of the common law of New Jersey, *Cipollone, supra,* 649 F.Supp. at 670-1, but eventually reluctantly yielded to a contrary interpretation by the New Jersey legislature. *Cipollone v. Liggett Group, Inc.,* No. 83-2864 (D.N.J. Oct. 27, 1987) (1987 U.S.Dist. LEXIS 9936) (1987 WL 14666). Last Friday, January 5, 1990, the Court of Appeals for the Third Circuit reversed that decision and declared that the risk/utility theory was part of the common law of New Jersey prior to the enactment of a recent statute. *Cipollone v. Liggett Group, Inc.,* 893 F.2d 541, 577-578 (3d Cir.1990). The court held that the statute relied upon by Judge Sarokin was not a codification of the law of New Jersey, despite a legislative committee report to the contrary. See *O'Brien v. Muskin Corp.,* 94 N.J. 169, 463 A.2d 298 (1983). I have examined the third circuit opinion with great care to see if it offers any guidance in determining what a Massachusetts court might decide. I find none.

In my view, the risk/utility theory is a very radical doctrine which imprudently arrogates to the judicial process some very significant societal determinations. It seems to me to create more problems than it solves. For instance, is purely hedonistic consumer preference for a product to be considered a component of "utility"? If not, a very large percentage of our manufactured products will end up on the proscribed list.

I see no basis in the Massachusetts cases for assuming that this radical theory is part of the law of the commonwealth, and I am accordingly obliged to reject it. Plaintiff points out that in *Back, supra,* 378 N.E.2d at 970, the court quotes certain felicitous language from *Barker v. Lull Engineering Co., Inc.,* 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (1978), one of the most radical of the risk/utility cases, often cited. Various factors bearing on liability are quoted, but the reference to

risk/utility analysis is notably missing. The same is true of *Colter v. Barber-Greene Co.,* 403 Mass. 50, 525 N.E.2d 1305, 1310 (1988). The Supreme Judicial Court has also made it clear in *Hayes, supra,* 462 N.E.2d at 278, that it has not bought the entire *Barker* package. The plaintiff's assertion that *Barker* states the law of the commonwealth with reference to risk/utility analysis is not warranted on the basis of these references. In *Uloth v. City Tank Corp.,* 376 Mass. 874, 384 N.E.2d 1188, 1191 (1978), the court relies on some of the factors which are considered in a risk/utility analysis, but that case involved consideration of *negligent design* only, and has no bearing on breach of warranty (a/k/a strict liability), the issue raised by the plaintiff in this case.

Statutory history may provide a clue to whether liability for breach of warranty attaches to a product merely because of its potentially lethal effects, absent any evidence of a defect. *Mavilia v. Stoeger Industries,* 574 F.Supp. 107 (D.Mass.1983). In that case Judge Garrity held that the rejection by the legislature of petitions for gun control legislation indicated that handgun manufacturers could not be held strictly liable simply because of a gun's lethal proclivities. Plaintiff attempts to distinguish the present case on the ground that the automatic pistol in that case is not lethal if used as intended, while cigarettes are potentially lethal if used as intended. In view of the fact that the principal use of an automatic pistol is to shoot people, I am not impressed with counsel's argument. Legislative history is similarly instructive in this case. Since at least 1909, Massachusetts has by statute prohibited the sale of cigarettes to persons under the age of 18, recognizing that cigarette smoking is potentially harmful. M.G.L. c. 270, § 6. This statute was reconsidered and amended by the General Court in 1985, when the potentially lethal effects of tobacco were well publicized. The legislature raised the legal age for the ingestion of snuff and chewing tobacco and increased the fines, but did not prohibit sales of cigarettes to adults.

Plaintiff urges me to stay further proceedings pending decision by the Supreme Judicial Court of the case *Kyte v. Philip Morris, Inc.*, No. SJC–5165 (argued Dec. 7, 1989), on the ground that the issue of the application of Restatement (Second) of Torts § 402A comment i to the sale of cigarettes is likely to be resolved by the decision in that case. I have reviewed the papers filed with the SJC. The case was reported to the SJC for determination of the extent to which civil liability may be imposed upon cigarette manufacturers for violation of M.G.L. c. 270, § 6, referred to above. As I understand Massachusetts procedure, the scope of appellate review is limited to the issues raised in the report. Although there is a passing reference to the Restatement in the plaintiffs' brief, the issues raised by this case are not implicated in the report and are unlikely to be reached by the SJC. Accordingly, I see no advantage in delaying a decision in the present case.

■ I conclude that the only claim remaining in this case is the claim that prior to 1965 the defendant had a duty to warn consumers of the carcinogenic properties of tobacco, and that its failure to do so was the cause of Mr. Kotler's death. This claim may be sustained on a theory of breach of warranty as well as on the basis of negligence. Certain elements of the claim are the same on either theory. *Wolfe v. Ford Motor Co.*, 6 Mass.App. 346, 376 N.E.2d 143, 150 (1978). *Cf.* Restatement (Second) of Torts § 402A comment j and § 388. The plaintiff must prove that the defendant knew or should have known of a dangerous characteristic of the product which was unknown to probable consumers. "But a seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger or potentiality of danger, is generally known and recognized." § 402A comment j; *Killeen v. Harmon Grain Products, Inc.*, 11 Mass.App. 20, 413 N.E.2d 767, 770–1 (1980). The distinctions lie in (1) the level of proof of causation required in each case, and (2) the effect of the purchaser's own conduct in establishing a defense. The breach of warranty resulting from a failure to warn must be the *sole* proximate cause of the plaintiff's injury, but negligent failure to warn need only be a proximate cause. *Colter v. Barber–Greene Co., supra,* 525 N.E.2d at 1312–4. Knowing and intentional use of a dangerous product with knowledge of its dangerous proclivities is a complete bar to recovery for breach of warranty, but in a negligence action the conduct of the plaintiff which will serve to bar recovery is governed by the comparative negligence statute, M.G.L. c. 231, § 85. *Correia v. Firestone Tire & Rubber Co.,* 388 Mass. 342, 446 N.E.2d 1033 (1983); *Colter, supra.*

The defendant asserts that it is entitled to summary judgment on this branch of the case because the plaintiff's proffered evidence fails to establish any causal connection between the defendant's failure to warn and the death of Mr. Kotler. As I read it, the testimony of plaintiff's witnesses fails to establish a time at which warnings would have made any difference to Mr. Kotler or have prevented him from killing himself with cigarette smoke. (Indeed, the testimony may well have the opposite effect.) Our court of appeals has held that under Massachusetts law, there is no presumption that if an adequate warning were given it would have been read and heeded. *Vincent v. Louis Marx & Co., Inc.,* 874 F.2d 36, 42–3 (1st Cir.1989), citing *Hayes v. Ariens Co.,* 391 Mass. 407, 462 N.E.2d 273, 278 (1984). The court relies on the following language from *Hayes:*

> Furthermore, contrary to the plaintiff's contentions, we do not read *Wolfe v. Ford Motor Co.,* 6 Mass.App. 346, 352, 376 N.E.2d 143 (1978), S.C., 386 Mass. 95, 434 N.E.2d 1008 (1982), or Restatement (Second) of Torts 402A comment j (1965), as favoring imposition on a defendant of the burden to prove the absence of a causal relationship between personal injuries and an inadequate warning of risk in the use of a product.

On November 29, 1989, however, the Supreme Judicial Court of Massachusetts decided that it was not error in a medical

malpractice case for the trial judge to charge that "[t]he law presumes that a warning if given will be heeded," citing *Glicklich v. Spievack*, 16 Mass.App. 488, 493, 452 N.E.2d 287, 291 (1983), and *Wolfe, supra*, 376 N.E.2d at 147. *Harlow v. Chin*, 405 Mass. 697, 545 N.E.2d 602 (1989). *Wolfe* in fact speaks of an inference which may be drawn in the absence of negating evidence. In *Glicklich* the court speaks of a presumption, but quotes the language from *Wolfe* about negating evidence. If there is a presumption, it would appear to be rebuttable. Whether what the Massachusetts courts have created is a rebuttable presumption or an inference need not be resolved at this point; either one creates an issue for the jury which mandates the denial of the defendant's motion for summary judgment and requires that the plaintiff's claim based on a failure to warn be reassigned for trial.

At trial the plaintiff will have the burden of proving the following propositions by a preponderance of the evidence:

1. Mr. Kotler's death was caused by his smoking of cigarettes manufactured by the defendant;

2. Failure of the defendant to give a proper warning of the carcinogenic character of the defendant's cigarettes was either the sole proximate cause or the proximate cause of Mr. Kotler's death, depending upon the legal theory espoused;

3. At the time during which a proper warning would have prevented Mr. Kotler's death, the carcinogenic character of its cigarettes was known or should have been known to the defendant, but was not generally known to the likely consuming public, and not known to Mr. Kotler; and

4. The plaintiff's damages.

In presenting her proof, the plaintiff shall have the benefit of the inference or rebuttable presumption described above. The defendant shall have the burden of establishing defenses based upon Mr. Kotler's own conduct.

Accordingly, the defendant's motion for summary judgment is denied with respect to the plaintiff's claim for failure to warn and allowed in all other respects.

## APPENDIX A

### MEMORANDUM AND ORDER ON MOTIONS OF LIGGETT GROUP, INC. AND PHILIP MORRIS FOR SUMMARY JUDGMENT AND OF PHILIP MORRIS FOR A PROTECTIVE ORDER

#### November 21, 1989

This is an action by the surviving widow of George Kotler to recover damages for the death of her husband allegedly caused by his lifelong addiction to cigarettes. The parties have stipulated that Mr. Kotler smoked the cigarettes sold by these defendants only after 1965, the effective date of The Federal Cigarette Labelling and Advertising Act, 15 U.S.C. §§ 1331–1340. Following the decision of the court of appeals in *Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir.1987), I dismissed all of the claims against Liggett Group, Inc. and Philip Morris except the claim for defective design of the defendants' cigarettes. 685 F.Supp. 15, 19 (1988).

The defendants seek summary judgment on the grounds that plaintiff has insufficient evidence as a matter of law to show that the defendants' tobacco was not "good tobacco" within the ambit of Comment i to Section 402A of the Restatement of Torts, Second. In my opinion the defendants correctly state that under Massachusetts law the defendants can not be held liable for selling tobacco simply because of tobacco's potentially lethal effects. *See e.g., Mavilia v. Stoeger*, 574 F.Supp. 107 (D.Mass.1983). I agree with the plaintiff, however, that unreasonableness of design is a jury issue, assuming there is sufficient evidence to go to a jury. *Back v. Wickes Corp.*, 375 Mass. 633, 378 N.E.2d 964 (1978); *Baker v. Liggett Group, Inc.*, 4.2 TPLR 2.11 (D.Mass.1988).

The plaintiff's problem is not with the choice of a legal theory, but with the dearth of any evidence to support her claim. In December 1988, *in accordance* with the court's scheduling order, she listed

**56**

the names of four expert witnesses who would testify about the toxic effect of cigarettes. In May of 1989, plaintiff withdrew the names of these experts and substituted the names of three others, Drs. Compton, Hilgenberg and Mark. These experts have been deposed and have expressed the opinion that the guilty carcinogen in cigarettes is the tobacco itself, but if additional carcinogenic material were added to the tobacco it would make the tobacco more carcinogenic. This appears on the face of it to be an uncontestable proposition, but the plaintiff has not developed any evidence on the record of any additives to the defendants' cigarettes.

■ She now seeks to correct this critical deficiency by noticing the deposition of various present and former employees of Philip Morris for the purpose of developing information as to Philip Morris's processing of tobacco. The case is scheduled for trial on January 3, 1990. The defendants seek a protective order on the ground that it is too late to start discovery on the essential predicates of the plaintiff's case six weeks before trial. The defendants would be entitled to secure expert testimony on whatever evidence was developed and the matter could drag on for another year.

The plaintiff argues that the discovery period is still open, until December 15, 1989, but this is a result of extensions granted only for a particular purpose. Discovery was originally scheduled to close on May 31, 1989. On motions of the plaintiff, this deadline was twice extended on the plaintiff's assertion that there were scheduling difficulties in the taking of depositions of the plaintiff's new array of experts, and for no other reason.

At oral argument I thrice asked plaintiff's counsel for an explanation of the delay. I received no satisfactory answer. The defendants' position on § 402A of the Restatement and Comment i has been known since they filed motions to dismiss at the outset of the case. The precise parameters of the plaintiff's burden of proof has been known since my order of May 25, 1988. I am sympathetic with the problems of a small law office attempting to mount a major products liability case against large corporations and their batteries of lawyers [1], but there is no evidence in this case of any attempt by the defendants to frustrate plaintiff's discovery up to this point. No discovery has been attempted. There is no reason why the six depositions could not have been called for in November 1988 as easily as in November 1989.

Clearly the courts have a duty to permit parties a reasonable opportunity to prepare and present their cases. There is a concomitant duty to bring these cases to some form of closure within a reasonable time, and the trial judge is expected to schedule and monitor the progress of each case. Fed.R.Civ.P. 16(b). In this case plaintiff has simply ignored a reasonable schedule (the case is over three years old) and now seeks to initiate her basic research on the eve of trial. In my view this would be an impermissible subversion of the court's scheduling obligation and should not be permitted.

Accordingly, the defendants' motion for a protective order is ALLOWED and the scheduled depositions shall not be taken. Similarly, the defendants need not answer the plaintiff's requests for admissions, since they are an aspect of discovery which was not included in the extensions of the discovery deadline.

I have given serious consideration to the motions for summary judgment because I am reluctant to terminate a case without trial when there is any possibility that the claim is meritorious. However, the one avenue of liability in this case has been ignored by plaintiff up to the eve of trial. It is apparent that the only case counsel has prepared is based on the inherent hazards of tobacco. It follows from my allowance of the protective order that plaintiff will not have sufficient evidence to go to the jury on the present state of the record.

**1.** I am aware, however, of solo practitioners who have successfully sued the largest corpora-

tions.

Accordingly, the summary judgment motions of Philip Morris and Liggett Group, Inc. are ALLOWED.